# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| X.AI LLC,<br><br>                Plaintiff,<br><br>    v.<br><br>KEITH ELLISON, in his official capacity, as Attorney General of Minnesota,<br><br>                Defendant. | Case No. 0:26-cv-03425-DWF-DTS<br><br>Hon. Judge Donovan W. Frank<br><br>**MEMORANDUM OF LAW IN SUPPORT OF X.AI LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................4

    A.    Grok Imagine..................................................................................4

    B.    HF 1606 ........................................................................................5

ARGUMENT ......................................................................................................8

    I.    xAI Is Likely To Succeed On The Merits Because HF 1606
    Violates The First Amendment, Both Facially and As Applied. ..........9

        A.    xAI's users are engaged in protected speech when they
        create or alter images using Grok Imagine. ...............................9

        B.    HF 1606 imposes a content-based restriction on protected
        speech and thus is presumptively invalid. ...............................12

        C.    HF 1606 fails strict scrutiny because it is overinclusive and
        there are other far less restrictive means of addressing the
        state's asserted interest..............................................................14

        D.    HF 1606 is also facially overbroad and thus chills protected
        speech.......................................................................................23

    II.    The Remaining Factors Support A Preliminary Injunction Or A
    Temporary Restraining Order If Necessary. ......................................26

CONCLUSION.................................................................................................29

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*303 Creative LLC v. Elenis*,
  600 U.S. 570 (2023)..................................................................10, 11

*Advantage Media, L.L.C. v. City of Hopkins*,
  379 F. Supp. 2d 1030 (D. Minn. 2005)............................................20

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
  594 U.S. 758 (2021) (per curiam)..............................................27, 28

*Americans for Prosperity Found. v. Bonta*,
  594 U.S. 595 (2021)........................................................................23

*Ashcroft v. ACLU*,
  542 U.S. 656 (2004)........................................................................19

*Ashcroft v. Free Speech Coal.*,
  535 U.S. 234 (2002).................................................15, 18, 19, 25

*Broadrick v. Oklahoma*,
  413 U.S. 601 (1973)........................................................................23

*Brown v. Ent. Merchs. Ass'n*,
  564 U.S. 786 (2011).............................................................10, 11, 12

*Buckley v. Valeo*,
  424 U.S. 1 (1976)............................................................................11

*Butler v. Michigan*,
  352 U.S. 380 (1957)........................................................................15

*Counterman v. Colorado*,
  600 U.S. 66 (2023)..........................................................................18

*Elrod v. Burns*,
  427 U.S. 347 (1976)........................................................................26

*Erznoznik v. City of Jacksonville*,
  422 U.S. 205 (1975)..................................................................15, 25

*Free Speech Coal. v. Paxton*,
606 U.S. 461 (2025)..................................................................................2, 9

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
515 U.S. 557 (1995)...................................................................................10

*Irizarry v. Yehia*,
38 F.4th 1282 (10th Cir. 2022) ..............................................................11

*McCullen v. Coakley*,
573 U.S. 464 (2014)...................................................................................13

*Minn. Chapter of Associated Builders & Contractors, Inc. v. Blissenbach*,
772 F. Supp. 3d 1044 (D. Minn. 2025)....................................................8

*Minn. Citizens Concerns for Life, Inc. v. Swanson*,
692 F.3d 864 (8th Cir. 2012) ...................................................................26

*Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*,
460 U.S. 575 (1983)...................................................................................11

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024)...................................................................................24

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992)...................................................................................28

*Murdock v. Pennsylvania*,
319 U.S. 105 (1943)...................................................................................12

*Ness v. City of Bloomington*,
11 F.4th 914 (8th Cir. 2021) ....................................................................10

*Nken v. Holder*,
556 U.S. 418 (2009)...................................................................................28

*Packingham v. N.C.*,
582 U.S. 98 (2017)......................................................................................15

*Phelps-Roper v. Nixon*,
509 F.3d 480 (8th Cir. 2007) ...................................................................26

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015)..................................................................12, 13, 14

*Reno v. ACLU*,
    521 U.S. 844 (1997).........................................................................12

*Republican Party of Minn. v. White*,
    416 F.3d 738 (8th Cir. 2005) ........................................................14, 15

*Schmitt v. Rebertus*,
    148 F.4th 958 (8th Cir. 2025) .......................................................26, 28

*Smith v. California*,
    361 U.S. 147 (1959).........................................................................29

*Snider v. City of Cape Girardeau*,
    752 F.3d 1149 (8th Cir. 2014) .........................................................23

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011).........................................................................10

*U.H.A. v. Bondi*,
    817 F. Supp. 3d 752 (D. Minn. 2026)..................................................8

*United States v. Playboy Ent. Grp., Inc.*,
    529 U.S. 803 (2000)..................................................................12, 14, 19

*United States v. Stevens*,
    559 U.S. 460 (2010)..................................................................12, 24, 25

*United States v. Williams*,
    553 U.S. 285 (2008).........................................................................24

*Video Software Dealers Ass'n v. Webster*,
    968 F.2d 684 (8th Cir. 1992) ...........................................................19

*Virginia v. Hicks*,
    539 U.S. 113 (2003).........................................................................23

*Winters v. New York*,
    333 U.S. 507 (1948).........................................................................10

iv

## Statutes

15 U.S.C. § 6851 ...................................................................................................20

47 U.S.C. § 223 ..........................................................................................20, 21, 22

Minn. Stat. § 325E.91 ...................................................................................*passim*

Minn. Stat. § 604.32 ..............................................................................................21

Minn. Stat. § 609.341 ..........................................................................................1, 6

Minn. Stat. § 617.262 .................................................................................20, 21, 22

## Other Authorities

*Acceptable Use Policy*, xAI, https://x.ai/legal/acceptable-use-policy
     (June 26, 2026).........................................................................................14

HF 1606, 94th Leg., § 1, subd. 1(b) (Minn. 2025) ................................................21

S., Hearing on HF 1606 Before the S. Judiciary & Pub. Safety
     Comm., 94th Minn. Leg., Reg. Sess. (Feb. 19, 2026),
     https://www.youtube.com/watch?v=Xo7JgKg8Rgk ...........................................5

*Terms of Service*, xAI, https://x.ai/legal/terms-of-service (June 26,
     2026) ......................................................................................................14

## INTRODUCTION

A state that seeks to guard its citizens against real harms nevertheless must also respect those same citizens' fundamental rights in the effort. In enacting HF 1606, the trouble is not that Minnesota sought to advance a legitimate interest in prohibiting the dissemination of artificially generated nude images of real people without their consent. xAI does not contest that interest, and it strictly prohibits its users from generating nude or sexualized images of people without their consent. Indeed, xAI has filed suit against users who evade its extensive technological blockers to generate such images in violation of this strict prohibition. The problem is that HF 1606 stretches far beyond the Legislature's claimed target to hit other, equally important rights protected by the Constitution.

HF 1606 makes it unlawful for a company to let a user alter an image to depict an "intimate part" in an image or video of an "identifiable individual." Minn. Stat. § 325E.91, subd. 1(d)(1); 2(a)(2). But rather than define "intimate part" with a common-sense definition of nudity (as similar statutes do), the Act borrows a criminal sexual-contact definition to include the "inner thigh" or "breast" (male or female), in addition to "the primary genital area, groin, [or] buttocks, . . . of a human being." Minn. Stat. § 609.341, subd. 5. The result is a content-based statute that reaches a large amount of ordinary and obviously lawful expression protected by the

1

First Amendment, with no exceptions for consent, knowledge, distribution, or legitimate uses.

Images and videos are expressive content, and protection does not depend on form, medium, or merit. The act of creating that expression is protected as well, because a right to publish would be worth little if the State could block the source. And artificial intelligence changes nothing, since the speaker who conceives an image and directs its creation uses Grok Imagine as a tool of speech. HF 1606 reaches that creation directly, restricting xAI from offering Grok Imagine's editing tools in Minnesota and limiting Minnesotans' access to means of making political satire, art, journalism, and edited family photographs.

HF 1606 burdens free speech on grounds the First Amendment forbids. It is content based, because whether a provider is liable depends entirely on what the resulting image depicts: editing a photograph is allowed so long as it does not reveal an inner thigh or a bare chest. Content-based restrictions must satisfy strict scrutiny, a standard "fatal in fact absent truly extraordinary circumstances." *Free Speech Coal. v. Paxton*, 606 U.S. 461, 485 (2025). Minnesota cannot carry that burden.

The Act then compounds the problem by omitting every limit that might have confined it to addressing the harm the Legislature described. It has no scienter requirement, so liability turns on what a user managed to do rather than on anything the provider knew or could have prevented. It never mentions consent, so a woman

2

who edits a photograph of herself is treated exactly like a stranger who edits her picture. It requires no dissemination, so an image seen by no one and deleted at once is a violation. It provides no exception for images with genuine artistic, political, satirical, journalistic, scientific, educational, medical, or religious value. And it is not the least restrictive means, because Minnesota and Congress have each already enacted narrower statutes that address the same harm. Those defects are not peculiar to xAI; they inhere in the statutory text. The Act is thus facially overbroad and, at minimum, unconstitutional as applied to xAI.

The need for relief is immediate. HF 1606 takes effect on August 1, 2026, and from that day, every violative image a Minnesotan creates is a separate potential $500,000 penalty event, with a private right of action for treble and punitive damages besides. Minn. Stat. § 325E.91, subds. 4, 5(a). Facing that exposure, xAI has no practical choice: in the face of crushing penalties and strict liability, xAI will restrict Grok Imagine's image-editing feature on the effective date. Compl. ¶ 7; Decl. ¶ 19.

xAI accordingly requests a preliminary injunction barring enforcement of HF 1606 against xAI, entered on or before July 31, 2026, and in the alternative an injunction barring enforcement of the Act altogether. If a ruling by that date is not feasible, and if the Attorney General will not disclaim enforcement against xAI while this Motion is pending, xAI requests a temporary restraining order to bridge the gap.

3

## BACKGROUND

### A.    Grok Imagine

xAI is a leading frontier AI developer. Its flagship product is a family of models known as Grok, which includes an image- and video-generation model called Grok Imagine. Compl. ¶ 12. Grok Imagine generates new images and short videos from ordinary written or spoken prompts, and it edits and animates images supplied by users. *Id.*; Decl. ¶ 7. The images and videos users create with Grok Imagine span the full range of visual culture: illustrations and concept art, animated family photographs, memes, product mockups, and political satire. Compl. ¶ 21.

Grok Imagine is designed so that anyone can use it. Creating or editing an image requires no artistic training, no technical knowledge, and no specialized software: users simply type or dictate a short description of what they have in mind, and the result arrives in seconds. Compl. ¶ 23; Decl. ¶ 7. This accessibility is why tools like Grok Imagine have produced an explosion of image- and video-based speech, and why these products have found an immediate audience. Compl. ¶ 19; Decl. ¶ 8. Grok Imagine is available in all fifty states through the Grok App, Grok.com, and an application programming interface. Compl. ¶ 24. Many of its users are located in Minnesota. Compl. ¶ 12; Decl. ¶ 8.

**B.     HF 1606**

HF 1606 is supposed to address the serious issues caused by nonconsensual dissemination of nude images.[1] But the Legislature tried to address this problem with a law that imposes an overbroad, content-based ban on free speech and the tools of visual expression. The Act prohibits a "person who owns or controls a website, application, software, program, or other service" from allowing "a user to access, download, or use the website, application, software, program, or other service" to create a "nudif[ied]" image or video. Minn. Stat. § 325E.91, subd. 2(a). It similarly prohibits making such images or videos "on behalf of a user." Minn. Stat. § 325E.91, subd. 2(a)(2). And it bans "advertis[ing] or promot[ing]" any such "website, application, software, program, or other service." Minn. Stat. § 325E.91, subd. 2(b).

The Act defines "nudify" as "the process by which: (1) an image or video is altered or generated to depict an intimate part not depicted in an original unaltered image or video of an identifiable individual; and (2) the altered or generated image or video is so realistic that a reasonable person would believe that the intimate part belongs to the identifiable individual." Minn. Stat. § 325E.91, subd. 1(d). This definition turns on two terms: "intimate part" and "identifiable individual."

---

[1] The Act's principal sponsor described the statute's applicability to consensual and nonconsensual nudified images as an intentional choice. Minn. S., Hearing on HF 1606 Before the S. Judiciary & Pub. Safety Comm., 94th Minn. Leg., Reg. Sess. (Feb. 19, 2026), https://www.youtube.com/watch?v=Xo7JgKg8Rgk (Statement of Senator Maye Quade at 0:40:14:10) [https://perma.cc/X646-WRJ2].

"Intimate part" is not defined directly in the statute. Minn. Stat. § 325E.91, subd. 1(c). It instead borrows a definition from Minnesota's sexual conduct laws, which define "intimate parts" as including "the primary genital area, groin, inner thigh, buttocks, or breast of a human being," Minn. Stat. § 609.341, subd. 5. In the context of those laws, the term delineates when nonconsensual touching constitutes criminal sexual contact. *See* Minn. Stat. § 609.341, subd. 11 (defining "Sexual contact" to include "the intentional touching by the actor of the complainant's intimate parts").

HF 1606's other key statutory term is "identifiable individual." The Act defines that term as "a person that is identifiable: (1) from the image itself, by the person depicted in the image, or by another person; or (2) from personal information displayed in connection with the image." Minn. Stat. § 325E.91, subd. 1(b). A person is "identifiable," in other words, if anyone—the subject, "another person," or a viewer of accompanying "personal information"—can identify him. The only textual limit on these definitions is the law's realism requirement: the altered or generated image must be "so realistic that a reasonable person would believe that the intimate part belongs to the identifiable individual." Minn. Stat. § 325E.91, subd. 1(d)(2).

Equally significant is what HF 1606 does *not* say. The word "consent" appears nowhere in the statute. Liability does not depend on whether the person depicted objected to the image, welcomed it, or even made it personally. A service used by

6

an adult to edit a photograph of herself or a consenting individual is covered on the same terms as a service used to create an image of an unwilling stranger. The Act likewise contains no exception for images of artistic, scientific, political, satirical, educational, medical, or religious significance. Its only exemption turns on the technical skill a service requires of its user, not on the value or purpose of the image. Minn. Stat. § 325E.91, subds. 1(e), 3. Nor does HF 1606 contain any scienter requirement. It creates a strict liability regime. A company's liability does not turn on whether the user intended to "nudify" anyone or to inflict harm on another. And the statute provides no defense or safe harbor for a service whose terms of use prohibit creation of a covered image or whose technical controls are designed to block such works—even if those controls are state-of-the-art and function to near-perfection. Providers are liable for "each unlawful access, download, or use" by a user, Minn. Stat. § 325E.91, subd. 5(a), no matter what measures they have deployed to prevent that use and no matter what efforts a user makes to circumvent them.

The penalties for violating HF 1606 are severe. The Act gives the Minnesota Attorney General enforcement authority and allows civil penalties up to "$500,000 for *each* unlawful access, download, or use under subdivision 2." Minn. Stat. § 325E.91, subd. 5(a) (emphasis added). It separately provides a private cause of action, which authorizes individuals depicted in violation of the law to seek treble

7

damages, punitive damages, injunctive relief, and attorney fees. Minn. Stat. § 325E.91, subd. 4.

Starting on August 1, 2026, every photograph edited by every Minnesota user triggers a separate potential $500,000 penalty. Confronted with that exposure, xAI plans to restrict Grok Imagine's image-editing feature in various ways before the effective date. Compl. ¶ 15; Decl. ¶ 21. The restricted service will likely cost xAI users and goodwill in Minnesota. *Id*. ¶ 20. But for HF 1606 and its penalties, xAI would continue to offer Grok Imagine's editing features to Minnesotans exactly as it does today. Compl. ¶ 15; Decl. ¶ 22.

## ARGUMENT

xAI is entitled to a preliminary injunction or temporary restraining order blocking the Minnesota Attorney General's enforcement of HF 1606. To obtain a preliminary injunction, xAI must show: (1) a substantial likelihood of success on the merits; (2) a threat of irreparable injury; (3) the threatened injury outweighs the threatened harm to the state; and (4) injunctive relief is in the public interest. *Minn. Chapter of Associated Builders & Contractors, Inc. v. Blissenbach*, 772 F. Supp. 3d 1044, 1049 (D. Minn. 2025) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113–14 (8th Cir. 1981) (en banc)). The standard for obtaining a temporary restraining order is the same. *See U.H.A. v. Bondi*, 817 F. Supp. 3d 752, 762 (D. Minn. 2026). xAI easily meets each of these requirements.

8

**I.     xAI Is Likely To Succeed On The Merits Because HF 1606 Violates The First Amendment, Both Facially and As Applied.**

HF 1606 violates the First Amendment. It restricts protected speech (*i.e.*, the creation of images and videos) and thereby burdens the expressive rights of xAI and the people who use Grok Imagine. Moreover, the Act turns on what an image or video depicts, and it applies to a wide swath of protected speech the government has no legitimate interest in prohibiting. These content-based burdens trigger strict scrutiny, which is "fatal in fact absent truly extraordinary circumstances." *Paxton*, 606 U.S. at 485. And Minnesota has no hope of satisfying strict scrutiny here. The Court should accordingly issue a preliminary injunction.

**A. xAI's users are engaged in protected speech when they create or alter images using Grok Imagine.**

Minnesotans use Grok Imagine to generate images and videos on subjects as varied as human thought—news, politics, religion, science, and education among them. Decl. ¶ 9. All of it is protected speech. xAI is likewise engaged in protected First Amendment activity insofar as it develops and provides the tool that makes it possible for others to create this speech. HF 1606 impermissibly burdens these rights by putting a broad category of AI-generated images and videos off limits.

The protections of the First Amendment are not limited to the spoken word. "All manner of speech—from pictures, films, paintings, drawings, and engravings, to oral utterance and the printed word—qualify for the First Amendment's

9

protections." *303 Creative LLC v. Elenis*, 600 U.S. 570, 587 (2023) (citation modified).  That is because the Free Speech Clause "looks beyond written or spoken words as mediums of expression," and "a narrow, succinctly articulable message is not a condition of constitutional protection." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 569 (1995). Coverage also does not turn on a work's merit; nor is constitutional protection limited "only to the exposition of ideas;" even material in which a court "can see nothing of any possible value to society" is "as much entitled to the protection of free speech as the best of literature." *Winters v. New York*, 333 U.S. 507, 510 (1948).

The images and videos that users create with Grok Imagine are speech within the meaning of the First Amendment. Like traditional mediums of expression, those images and videos "communicate ideas—even social messages—through many familiar literary devices … and through features distinctive to the medium." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 790 (2011). "That suffices to confer First Amendment protection." *Id.*

The act of creating those images and videos is likewise protected. "Whether government regulation applies to creating, distributing, or consuming speech makes no difference." *Id.* at 792 n.1; *see also Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) ("creation and dissemination of information are speech within the meaning of the First Amendment"); *Ness v. City of Bloomington*, 11 F.4th 914, 923 (8th Cir.

2021) ("[t]he acts of taking photographs and recording videos are entitled to First Amendment protection"). Were it otherwise, "the government could bypass the Constitution by simply proceeding upstream and damming the source of speech." *Irizarry v. Yehia*, 38 F.4th 1282, 1289 (10th Cir. 2022).

The use of artificial intelligence does not change the constitutional analysis. The "'basic principles of freedom of speech and the press … do not vary' when a new and different medium for communication appears." *Brown*, 564 U.S. at 790 (quoting *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 503 (1952)). Expression is "no less protected speech today" because it is created with new instruments rather than "pen and paper." *303 Creative*, 600 U.S. at 587.

The First Amendment also protects xAI insofar as it is developing and providing users with an expressive tool that facilitates their creation of speech. States cannot target expressive tools, because doing so burdens the expression those tools make possible. In *Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*, 460 U.S. 575 (1983), for example, the Supreme Court held that a levy on the paper and ink a newspaper consumed "burden[ed] rights protected by the First Amendment," even though it fell on a commodity rather than on any published word. *Id.* at 582; *cf. Buckley v. Valeo*, 424 U.S. 1, 19 (1976) (per curiam) ("A restriction on the amount of money a person or group can spend on political communication during a campaign necessarily reduces the quantity of expression by restricting the

11

number of issues discussed, the depth of their exploration, and the size of the audience reached"); *Murdock v. Pennsylvania*, 319 U.S. 105, 113–14 (1943) (striking down a flat license tax imposed as a condition of religious canvassing and door-to-door solicitation). Grok Imagine is the modern-day paper and ink: Minnesotans supply the concepts and the directions, and the tool renders what they describe.

### B. HF 1606 imposes a content-based restriction on protected speech and thus is presumptively invalid.

It is the "most basic" principle of the First Amendment that the "government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Brown*, 564 U.S. at 790–91. "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). The Supreme Court has applied these principles to speech of many different forms, from outdoor signs to violent video games to depictions of animal cruelty to sexually suggestive content on television and the internet—just to name a few examples from recent years. *See id.* at 159; *Brown*, 564 U.S. at 799; *United States v. Stevens*, 559 U.S. 460, 468–69 (2010); *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813–14 (2000); *Reno v. ACLU*, 521 U.S. 844, 874 (1997).

HF 1606 explicitly regulates expression based on content. By its plain terms, the Act applies only to a website, application, software, program, or other service that is capable of altering an image "to depict an intimate part not depicted" in the original image. Minn. Stat. § 325E.91, subd. 1(d)(1). And providers violate HF 1606 each time a user downloads, accesses, or uses the service "to nudify an image or video." *Id.*, subd. 2(a)(1). The law does not prohibit using AI-powered image generation tools to alter an image by swapping out the background for a dramatic landscape, softening the lighting, or changing someone's hairstyle. But if the exact same tool is used to change an individual's attire in a way that reveals the inner thigh or breast, then the Attorney General can seek a $500,000 civil penalty. Put another way, HF 1606 can only be enforced by reference to the content of the images that users create—a hallmark of content-based laws. *See McCullen v. Coakley*, 573 U.S. 464, 479 (2014) (law content based "if it required 'enforcement authorities' to 'examine the content of the message that is conveyed to determine whether' a violation has occurred" (quoting *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 383 (1984))). HF 1606 thus "singles out specific subject matter for differential treatment," *Reed*, 576 U.S. at 169, which is the most "obvious" form of facial content discrimination, *id.* at 163.

13

### C. HF 1606 fails strict scrutiny because it is overinclusive and there are other far less restrictive means of addressing the state's asserted interest.

Content-based restrictions are "presumptively unconstitutional," and Minnesota bears the burden of proving that HF 1606 is narrowly tailored to serve a compelling interest. *Reed*, 576 U.S. at 163; *Playboy*, 529 U.S. at 816. A narrowly tailored regulation is one that "actually advances the state's interest (is necessary), does not sweep too broadly (is not overinclusive), does not leave significant influences bearing on the interest unregulated (is not underinclusive), and could be replaced by no other regulation that could advance the interest as well with less infringement of speech (is the least-restrictive alternative)." *Republican Party of Minn. v. White*, 416 F.3d 738, 751 (8th Cir. 2005) (en banc). While xAI does not dispute Minnesota's compelling interest in curbing the nonconsensual dissemination of artificially generated nude images—an interest xAI itself enforces through its own moderation and terms of service[2]—HF 1606 is not narrowly tailored to advance it

---

[2] *See* Decl. ¶ 11 and Exhibit A; *see also Terms of Service*, xAI, https://x.ai/legal/terms-of-service (June 26, 2026) [https://perma.cc/EDE2-B4ZJ] ("You may not access or use our Services to engage in, or help another person engage in, or promote any illegal, harmful, or abusive activities, or any other behavior that violates our Acceptable Use Policy."); *Acceptable Use Policy*, xAI, https://x.ai/legal/acceptable-use-policy (June 26, 2026), [https://perma.cc/Y3ET-K6VJ] (prohibiting users from "[u]ndressing or nudifying real persons, or otherwise altering a real person's image or likeness to depict them in an intimate or sexual context.").

because the law is overinclusive and there are far less restrictive alternatives that could achieve the same ends.

**1.** A statute is overinclusive when it "sweep[s] too broadly," burdening more protected speech than the State's interest requires. *White*, 416 F.3d at 751. A State may not "burn the house to roast the pig," *Butler v. Michigan*, 352 U.S. 380, 383 (1957), or "suppress lawful speech as the means to suppress unlawful speech." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255 (2002). Indeed, "[t]he Constitution requires the reverse." *Id.* Nor does a compelling interest rescue an ill-fitting statute. *See Packingham v. N.C.*, 582 U.S. 98, 107 (2017) (law barring sex offenders from social media, though aimed at preventing sex crimes, swept too broadly). HF 1606 sweeps far beyond Minnesota's interest and punishes a large amount of innocuous and protected speech.

*First*, HF 1606 forbids a wide range of images containing no nudity as that term is ordinarily understood. The Act covers benign images of people in shorts (inner thigh), men without shirts (breast), and competitive swimmers (buttocks and breast). Penalizing a company because a user created an image of that kind serves no legitimate interest the State can assert. *See Erznoznik v. City of Jacksonville*, 422 U.S. 205, 213 (1975) (ordinance forbidding films containing "any uncovered buttocks or breasts" unconstitutionally reached beyond protecting minors from

15

sexual content to "bar a film containing a picture of a baby's buttocks, the nude body of a war victim, or scenes from a culture in which nudity is indigenous").

*Second*, HF 1606 allows no exception for altered images and videos with political, scientific, educational, journalistic, artistic, medical, or religious value— all of which are unequivocally protected speech. It applies both to a citizen creating a strongman parody of a male politician posing shirtless and to a student maliciously creating deepfake pornography depicting a classmate. Although Minnesota has a significant interest in curbing the latter, it cannot assert any plausible interest in banning the former.

Take one recent example. In May 2026, President Trump publicly posted an image depicting himself, the Vice President, the Secretary of State, and the Secretary of the Interior shirtless in the reflecting pool on the National Mall. Compl. ¶ 36.



*Id.* The image is political satire of a familiar kind. Repairs to the reflecting pool had drawn public criticism, and the President answered his critics by posting a picture of

himself and three members of his Cabinet treating the pool as a swimming hole. *Id.* Whatever one makes of the joke, mocking one's political opponents over a public controversy is core First Amendment activity. And yet, under HF 1606, that image unlawfully "nudifies" identifiable individuals because each man's breast is "depict[ed]" where it was not depicted before. *See also* Compl. ¶¶ 37–38 (satirical images of two governors in a sumo match and of the President on a Chinese street with President Xi, Elon Musk, and Tim Cook, depicting breasts or inner thighs).

*Third*, the Act applies regardless of whether the individuals depicted in the image consented to the alterations—or indeed performed the alterations themselves. HF 1606's principal sponsor stated that this was an "intentional" drafting decision, asserting that there is no way to distinguish between images that are nudified with and without consent.[3]

Because HF 1606 forbids the consensually created image on the same terms as the nonconsensually created one, it reaches every artist, every model, every photographer, and every adult who edits a picture of herself or edits a picture of another with the subject's consent so long as the end product fits the statute's broad definition of "nudification." Creating a revealing image of an unwilling stranger and creating the same image of oneself (or of one's partner with that person's consent) are not morally equivalent acts, and a statute that treats them identically restricts far

---

[3] *Supra* note 1.

17

more speech than its object requires. Thus, the interest that Minnesota has in preventing *nonconsensual* "nudification" cannot sustain a prohibition on *consensual* "nudification." As the Supreme Court explained in *Ashcroft v. Free Speech Coalition*, "[p]rotected speech does not become unprotected merely because it resembles" speech the state may prohibit. 535 U.S. at 255.

*Fourth*, HF 1606 creates a strict-liability regime with no scienter requirement. Liability turns exclusively on whether a user is successful in altering an image or video in a proscribed way. The statute provides no safe harbor for AI providers whose terms of service prohibit nudification and who enforce those terms. Nor does it provide a safe harbor for providers who deploy robust, state-of-the-art controls to prevent users from using its service to create prohibited images or videos. Because HF 1606's prohibition is backed by a $500,000-per-image civil penalty, providers facing strict liability may well have no choice but to withdraw their services from Minnesota rather than run the risk that users will evade their controls. And that would hamper all uses of AI image-generation tools, including those that HF 1606 does not purport to regulate. This chilling effect is why the First Amendment requires states to impose a "subjective mental-state requirement" before restricting even the least protected categories of expression—including obscenity, incitement, and true threats. *Counterman v. Colorado*, 600 U.S. 66, 75–76 (2023). As the Eighth Circuit cautioned, "any statute that chills the exercise of First Amendment rights must

18

contain a knowledge element." *Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 690 (8th Cir. 1992). But HF 1606 does not.

*Fifth*, although the State has a clear interest in preventing the psychological harm that results when prohibited images are maliciously shared, HF 1606 does not include a dissemination requirement. Accordingly, an image generated once, seen by no one but the user who made it, and immediately deleted incurs the same $500,000 penalty as an image broadcast to the world. Because liability does not turn on distribution, Minnesota cannot invoke any purported distribution-related harms to sustain HF 1606. *See Free Speech Coal.*, 535 U.S. at 253 (state "may not prohibit speech because it increases the chance an unlawful act will be committed at some indefinite future time" (citation modified)).

2.      In addition to being overinclusive, HF 1606 is not the least restrictive means of furthering the state's asserted interest. Narrower alternatives are readily available, and Minnesota cannot show they would fail to prevent the conduct the law seeks to deter.

"If a less restrictive alternative would serve the [g]overnment's purpose, the legislature must use that alternative." *Playboy*, 529 U.S. at 813. The government has the burden "to prove that the [less restrictive] alternative will be ineffective to achieve its goals," *id.* at 816, and "the risk of nonpersuasion … must rest with the [g]overnment, not with the citizen," *id.* at 818; *see also Ashcroft v. ACLU*, 542 U.S.

19

656, 665 (2004); *Advantage Media, L.L.C. v. City of Hopkins*, 379 F. Supp. 2d 1030, 1042 (D. Minn. 2005).

Here, existing state and federal law demonstrates that Minnesota's interest can be achieved in a less speech-restrictive way. For example, the statute could easily have been drafted with a narrower definition of "intimate part." Instead of borrowing the "intimate part" definition from the state's criminal-sexual-contact statute, the Legislature could have used the definition in the state's deep-fake statute, which defines "intimate parts" more precisely to include "the genitals, pubic area, anus, or partially or fully exposed nipple of an individual." Minn. Stat. § 617.262, subd. 1(f). Congress has drawn the line even more carefully, defining "intimate visual depiction" in the Violence Against Women Act Reauthorization to include "the uncovered genitals, pubic area, anus, or post-pubescent female nipple of an identifiable individual." 15 U.S.C. § 6851(a)(5)(A)(i); *see also* 47 U.S.C. § 223(h)(1)(E) (incorporating that definition for purposes of the TAKE IT DOWN Act). Either definition would reach every image the Legislature set out to stop here, without also applying to a runner in shorts or a swimmer in a racing suit. And the federal statute would not apply to an image of a shirtless man. The Legislature was not ignorant of these less restrictive alternatives. The narrower definition was initially in the bill: an earlier version of HF 1606 cross-referenced the deep-fake

20

statute's definition, but the Legislature replaced it with the more sweeping definition.[4]

HF 1606 would also be less restrictive if it imposed liability only when the user created an image without the subject's consent. Several comparable statutes contain such a requirement. *See* Minn. Stat. § 617.262, subd. 2(1); *id.* § 604.32, subd. 2(a)(1); 47 U.S.C. § 223(h)(3)(A). That element would more narrowly align with the Act's core aim while removing from its reach the artist, the model, the consenting couple, and the adult who edits a photograph of herself—all of whom the state has no legitimate basis for regulating.

The Act would be narrower still if it limited liability to cases where a prohibited image (more narrowly defined) is disseminated. Minnesota's deep-fake statute reaches the person who "intentionally disseminate[s]" the image, Minn. Stat. § 617.262, subd. 2, and the federal Act reaches one who "knowingly publish[es]" it, 47 U.S.C. § 223(h)(3)(A). Yet under HF 1606 liability attaches at creation, regardless of whether anyone but the user ever sees it.

A scienter requirement would narrow the statute even further while still advancing the state's interest. Indeed, Minnesota's deep-fake statute requires proof that the actor "knows or reasonably should know" that the subject did not consent, Minn. Stat. § 617.262, subd. 2(1), and the federal TAKE IT DOWN Act requires

---

[4] *See* HF 1606, 94th Leg., § 1, subd. 1(b) (Minn. 2025) (as introduced Feb. 26, 2025).

knowing publication, 47 U.S.C. § 223(h)(3)(A). It makes little sense to require proof of mens rea when imposing liability on *the creator* of a nudified image while imposing strict liability on the *AI service* the creator used to make it. The government's interests would not be undermined by providing a safe harbor to AI providers who make good-faith efforts to prevent users from creating nonconsensual nudified images, properly understood. On the contrary, providing a safe harbor would advance the state's interest by incentivizing providers to implement robust controls.

Minnesota could also have exempted images of evident value, as it has done before. The deep-fake statute does not apply where the dissemination is made "in the course of seeking or receiving medical or mental health treatment," in a commercial setting "including the creation of artistic products for sale or display," where the image "relates to a matter of public interest and dissemination serves a lawful public purpose," or "for legitimate scientific research or educational purposes." Minn. Stat. § 617.262, subd. 6(3)–(6). Congress did the same. *See, e.g.*, 47 U.S.C. § 223(h)(3)(A)(iii) (excluding images depicting "a matter of public concern"); *id.* § 223(h)(3)(C)(ii)(III) (exempting images disclosed "reasonably and in good faith … as part of medical education, diagnosis, or treatment or for a legitimate medical, scientific, or education purpose"). An exemption of that kind would have spared the historian, the artist, and the medical school.

22

Because HF 1606 is content based and fails strict scrutiny, the Act is unconstitutional, both facially and as applied to xAI. Accordingly, xAI is likely to prevail on the merits of its pre-enforcement First Amendment claim.

### D. HF 1606 is also facially overbroad and thus chills protected speech.

xAI is also likely to prevail on its facial challenge because HF 1606 is plainly overbroad and thus chills wide swaths of protected speech.

Outside the First Amendment, a facial challenge requires the plaintiff to show that no set of circumstances exists under which the law would be valid, or that the law lacks a plainly legitimate sweep. *See Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021). The overbreadth doctrine sets a lower bar, permitting facial invalidation of a law that "punish[es] a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep." *Virginia v. Hicks*, 539 U.S. 113, 118–19 (2003) (citation modified); *see also Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1157 (8th Cir. 2014). It also departs from ordinary standing rules, allowing a litigant to invoke the rights of others "because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).

The overbreadth analysis proceeds in two steps, separate from the tailoring inquiry above. A court first construes the statute because "it is impossible to

23

determine whether a statute reaches too far without first knowing what the statute covers." *United States v. Williams*, 553 U.S. 285, 293 (2008). It then identifies which of the statute's applications offend the First Amendment and "measure[s] them against the rest" of the statute's applications. *Moody v. NetChoice, LLC*, 603 U.S. 707, 725 (2024). A statute is facially invalid where its "presumptively impermissible applications … far outnumber any permissible ones." *Stevens*, 559 U.S. at 481.

As an initial matter, HF 1606 threatens the First Amendment rights of Grok's users because xAI's only rational response to the statute is to restrict the service in Minnesota. These users will thus be limited in their use of Grok—or other AI editing features—to engage in core First Amendment expression, including political satire, journalism, medical and scientific illustration, religious art, and more. But they cannot protect themselves through as-applied litigation because subdivision 2 does not reach them—nothing in the Act prohibits a user from nudifying an image or a third party from distributing one. *See supra* p. 5. The statute operates on them by forcing the AI platform to remove the tool, leaving no enforcement action to defend and no forum in which to be heard. xAI is thus best positioned to defend its users' constitutional rights.

Turning to step one, HF 1606's scope is fixed by the three definitions described above. *See supra* pp. 5–7 (defining "nudify," "intimate part," and "identifiable individual"). Under any reasonable construction of the Act, the law

24

reaches every AI image-editing service available in Minnesota and every alteration that adds a covered body region to an image of a recognizable person.

The answer at step two is equally self-evident: the statute impermissibly applies to a wide range of constitutionally protected speech, and these impermissible applications overwhelm the Act's legitimate applications. As explained above, HF 1606 reaches pictures that would not be considered "nudes" under any recognized definition; it reaches images that are political, satirical, religious, educational, journalistic, artistic, or medical in nature; it reaches AI-altered images where the subject consented and where the subject is the user himself; it reaches images that were never disseminated; and it reaches each of these regardless of whether the AI platform implemented terms of service and technical tools to block genuine nudification. *See supra* pp. 15–23. This overbreadth renders HF 1606 facially invalid. *See, e.g.*, *Stevens*, 559 U.S. at 482 (invalidating statute directed at films depicting animal violence because it reached hunting videos and bullfighting films); *Free Speech Coal.*, 535 U.S. at 256 (invalidating ban on virtual child pornography because computer-generated images that "appear to be" of minors reached mainstream films depicting adolescent sexuality); *Erznoznik*, 422 U.S. at 213.

25

Because HF 1606 is facially unconstitutional, xAI is likely to prevail on the merits of its First Amendment claim.

## II.     The Remaining Factors Support A Preliminary Injunction Or A Temporary Restraining Order If Necessary.

The other preliminary injunction factors—irreparable harm, balance of equities, and the public interest—likewise favor granting a preliminary injunction.

**1.** In a First Amendment case, "the likelihood of success on the merits is often the determining factor in whether a preliminary injunction should issue." *Phelps-Roper v. Nixon*, 509 F.3d 480, 485 (8th Cir. 2007); *see also Minn. Citizens Concerned for Life, Inc. v. Swanson,* 692 F.3d 864, 870 (8th Cir. 2012) ("When a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied." (citation modified)). After all, the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Schmitt v. Rebertus*, 148 F.4th 958, 970 (8th Cir. 2025) (quoting same). And the First Amendment harm here is not just to xAI, but to millions of Minnesotans who will be limited in accessing a vital tool of free expression. If the Attorney General is not enjoined from enforcing HF 1606, the Act's restrictions will cause an irreparable loss of First Amendment

26

freedoms on a large scale. Beyond that, the Act will impose significant—and unrecoverable—compliance costs on xAI if it takes effect.

The Act's drastic penalties—up to $500,000 for every prohibited image generated—along with the potential for private litigants to pursue treble damages, punitive damages, and attorney fees make the harm especially severe for xAI. Minn. Stat. § 325E.91, subds. 4, 5. And the Act's strict liability standard (combined with the necessarily probabilistic nature of moderation) makes perfect compliance impossible. *See* Decl. ¶ 17.

Even if xAI could perfectly comply with the Act while this case proceeds, xAI would suffer irreparable injury. Complying with the Act will require xAI to make significant changes to Grok Imagine and impose other costs that cannot be recouped at the conclusion of this lawsuit. *See* Decl. ¶¶ 19–20. Among other things, xAI must design, test, deploy, and then maintain geographically targeted controls within Grok Imagine's image-editing pipeline. *Id.* ¶ 19. And these changes will affect user experience and, consequently, harm subscription rates and consumer goodwill in Minnesota. *Id.* ¶ 20. These types of economic and operational injuries are irreparable. *See, e.g.*, *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 765 (2021) (per curiam) (financial costs "with no guarantee of eventual recovery" are irreparable injury).

27

In short, unless the Attorney General is preliminarily enjoined from enforcing HF 1606, xAI will face a choice between exposing itself to massive liability for providing a tool of free expression to Minnesotans or taking costly and burdensome steps that will negatively impact its Grok Imagine product—all before a court decides the merits of the company's claims. That is enough to establish irreparable injury. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) ("irreparable injury" where plaintiffs faced "Hobson's choice" of "expos[ing] themselves to potentially huge liability" or "suffer[ing] the injury of obeying" preempted law).

**2.** The balance of equities and the public interest factors "merge when the [g]overnment is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). And these factors tilt just as decisively in favor of injunctive relief here. For one, "it is always in the public interest to protect constitutional rights." *Schmitt*, 148 F.4th at 970 (quoting *Rodgers v. Bryant*, 942 F.3d 451, 458 (8th Cir. 2019)). On the flip side, Minnesota has no valid interest because it may not "act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors*, 594 U.S. at 766. And "the balance of the equities generally favors the constitutionally-protected freedom of expression." *Schmitt*, 148 F.4th at 970 (quoting *Rodgers*, 942 F.3d at 458).

Maintaining the status quo until HF 1606's glaring constitutional problems can be fully adjudicated will cause little if any harm to the State. And the public has

28

an interest in preserving complete access to a speech-enabling tool that will remain available in the other forty-nine States. *Cf. Smith v. California*, 361 U.S. 147 (1959).

## CONCLUSION

xAI respectfully requests a preliminary injunction barring Attorney General Ellison from enforcing HF 1606 against xAI, entered on or before July 31, 2026. Because HF 1606 is unconstitutionally overbroad, xAI alternatively requests an injunction barring enforcement of the Act altogether. And if a ruling by July 31 is not feasible and Defendant will not disclaim enforcement in the interim, xAI requests a temporary restraining order until the Court can rule.

Dated: July 29, 2026                    Respectfully submitted,


                                        */s/ Todd A. Noteboom*
                                        Todd A. Noteboom (#0240047)
                                        Andrew P. Leiendecker (#0399107)
                                        Sarah R. Almquist (#0403469)
                                        STINSON LLP
                                        50 South Sixth Street, Suite 2600
                                        Minneapolis, MN 55402
                                        (612) 335-1500
                                        todd.noteboom@stinson.com
                                        andrew.leiendecker@stinson.com
                                        sarah.almquist@stinson.com

                                        Robert E. Dunn (*pro hac vice*)
                                        EIMER STAHL LLP
                                        1999 S. Bascom Ave., Suite 1025
                                        Campbell, CA 95008
                                        (408) 889-1690
                                        RDunn@eimerstahl.com

29

Johnathan Hall (*pro hac vice* motion pending)
EIMER STAHL LLP
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604
(312) 660-7600
jhall@eimerstahl.com


*Attorneys for Plaintiff X.AI LLC*

30

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Memorandum of Law in Support of X.AI LLC's Motion for Temporary Restraining Order and Preliminary Injunction complies with the limits in Local Rule 7.1(f) and with the type-size limit of Local Rule 7.1(h) because: (1) it contains 6,747 words, excluding the parts of the Memorandum exempted by Local Rule 7.1(f)(1)(C); and (2) it has been prepared in a proportionally spaced typeface using Microsoft Word version 2024 in a 14-point Times New Roman font in the text and footnotes.

*/s/ Todd A. Noteboom*
Todd A. Noteboom