UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

X.AI LLC,

Plaintiff,

vs.

Keith Ellison, in his official
capacity as Attorney General
of Minnesota,

Defendant.

Civil File No. 26-cv-03425 (DWF/DTS)

**MEMORANDUM OF LAW
IN OPPOSITION TO X.AI'S MOTION
FOR A TEMPORARY RESTRAINING
ORDER**

### INTRODUCTION[1]

On July 27, 2026, X.AI sued the Minnesota Attorney General to block a Minnesota law that bans AI technology that is used to create sexual images. To hear X.AI tell it, the company's flagship AI product, Grok Imagine, is a noble technology that allows "[k]indergarten teachers teaching a unit on dinosaurs . . . to create a coloring page of a tyrannosaurs rex or triceratops." (Compl. ¶ 21.)

Minnesota's ban on AI nudification technology does not apply to images of t-Rexes or triceratopses.[2] Minnesota's Nudification Ban applies to AI-generated sexual images and

---

[1] This lawsuit was filed just four days ago. This brief is an opposition to X.AI's TRO motion, which seeks relief on or before Friday, July 31, 2026. The Attorney General will submit separate briefing, once a schedule is decided by the Court, in response to X.AI's preliminary injunction motion. The Attorney General should have a fair opportunity for full preliminary injunction briefing. The Attorney General preserves all arguments whether made herein or not.

[2] To nudify means the process by which "an image or video is altered or generated to depict an intimate part not depicted in an original unaltered image or video of an identifiable individual," and "the altered or generated image or video is so realistic that a reasonable

other intimate parts—including the staggering amount child sexual abuse material that AI products like Grok Imagine generate. Indeed, several recent lawsuits have been filed against X.AI about this exact issue.  Five children brought a class action against X.AI alleging that their photographs were used to create child porn on Grok Imagine.[3] Two Arkansas families have sued X.AI in Arkansas federal court alleging that Grok was used to generate child porn of their daughters, who are under 15 years old.[4] And a UK lawmaker who criticized X.AI owner, Elon Musk, sued the company because Grok users created fake images of her "being chlorophormed and prepared for sexual assault."[5]  SpaceX has set aside over half a billion dollars for potential litigation losses for these and other claims because the risks of Grok Imagine's "Spicy" and "Unhinged" modes are well-known.[6]

Minnesota's Nudification Ban prohibits the tools that allow these types of AI-generated sexual images to proliferate and flourish, and X.AI's motion for a TRO to block Minnesota's law should be denied. First, X.AI's lack of diligence confirms that a TRO is unnecessary. The company waited until the last minute to sue. Second, X.AI has not shown that it will suffer irreparable harm because the main alleged injury is financial—not to

---

person would believe that the intimate part belongs to the identifiable individual."  Minn. Laws 2026, c. 177 § 1, subd. 1(d).

[3] Amended Complaint, ECF No. 26, *Doe 1 v. X.AI Corp.*, No. 5:26-cv-02246 (N.D. Cal. filed July 7, 2026).

[4] *Doe v. X.AI*, Case No. 4:26-cv-00750-LPR (E.D. Ark. filed July 23, 2026); *Doe v. X.AI*, Case No. 4:26-cv-00772-DPM (E.D. Ark. filed July 29, 2026).

[5] Peter Walker, "Labour MP sues Elon Musk's xAI company over fake sexualised images," THE GUARDIAN, https://www.theguardian.com/technology/2026/jun/03/labour-mp-sues-elon-musks-ai-company-over-fake-sexualised-images (June 3, 2026).

[6] Maxwell Zeff & Paresh Dave, "SpaceX Listed Grok's 'Spicy' Mode as a Risk in Its IPO Filing," WIRED, https://www.wired.com/story/spacex-ipo-grok-spicy-mode-risks/ (May 20, 2026).

mention minimal and unsubstantiated. Third, the balance of harms and the public interest cut decisively in favor of Minnesota's Nudification Ban. X.AI concedes that Minnesota has a compelling interest in blocking AI-generated sexual imagery. And the state is always harmed—and the public interest undermined—when it is enjoined from enforcing statutes adopted by its democratically-elected and democratically-accountable representatives. Finally, X.AI is unlikely to succeed on the merits. X.AI has brought a pre-enforcement facial challenge to Minnesota's law, "and that decision comes at a cost." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). X.AI effectively concedes that Minnesota's law has substantial constitutional applications. And it does not come close to meeting its burden of showing that any unconstitutional applications outweigh the constitutional ones.

The motion for a temporary restraining order should be denied, and this case should be set for normal preliminary injunction briefing.

## STATEMENT OF FACTS

The House passed the anti-nudification bill on April 23, 2026. Minn. H.J., 94th Leg., Reg. Sess. 6139-40 (2026). Only one House member voted against it. The Senate passed the bill on April 29, 2026. Minn. Sen. J., 94th Leg., Reg. Sess. 9257-58 (2026). The Senate vote was unanimous. *Id.* It was signed into law by the Governor on May 7, 2026. Minn. Laws 2026, c. 72.[7] The Minnesota Nudification Ban is scheduled to go into effect tomorrow, Saturday, August 1. *See* Minn. Stat. § 645.02.

---

[7] Available at https://www.revisor.mn.gov/laws/2026/0/Session+Law/Chapter/72/.

3

## LEGAL STANDARD

A preliminary injunction "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). In determining whether to grant a temporary restraining order or preliminary injunction, the Court must consider (1) the probability that the movant will succeed on the merits; (2) the threat of irreparable harm to the movant; (3) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981); *see Joy Grp. Oy v. Supreme Brands L.L.C.*, No. CV 15-3676 (DWF/FLN), 2016 WL 410272, at *2 (D. Minn. Feb. 2, 2016) (noting same standard applies to both motions). The party requesting injunctive relief bears the "complete burden" of proving all of the factors listed above. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

Moreover, because X.AI seeks to enjoin legislation, it bears the heavy burden of establishing likelihood of success on the merits, not just a fair chance of prevailing. This "more rigorous standard":

> [R]eflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly. If the party with the burden of proof makes a threshold showing that *it is likely to prevail on the merits, the district court should then proceed to weigh the other Dataphase factors*.

*Planned Parenthood of Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (emphasis added) (internal citation and quotation marks omitted). X.AI has not met its burden on this or any other factor.

## ARGUMENT

The Court should deny X.AI's motion for a TRO, convert the TRO motion into a preliminary injunction motion, and order the preliminary-injunction briefing to proceed on the normal schedule under Local Rule 7.1(c). X.AI's motion comes too late, and it has failed to demonstrate irreparable harm warranting a TRO. Moreover, the balance of the equities and the public interest favor denying a TRO. And X.AI has not shown a likelihood of success on the merits in this pre-enforcement facial challenge.

## I.    THE COURT SHOULD DENY THE MOTION FOR LACK OF DILIGENCE AND IRREPARABLE HARM.

X.AI is a sophisticated and well-resourced litigant yet chose to wait until just a few days before Minnesota's Nudification Ban effective date to bring this lawsuit. X.AI's lack of diligence and unreasonable delay confirms that a TRO is unnecessary.

"[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, 585 U.S. 155, 159 (2018). "[D]elay in seeking relief vitiates much of the force of allegations of irreparable harm." *Hum. Rts. Def. Ctr. v. Sherburne Cnty., Minnesota*, No. CV 20-1817 ADM/HB, 2020 WL 7027840, at *6 (D. Minn. Nov. 30, 2020) (citation and internal quotation marks omitted).

Here, the legislature passed Minnesota's Nudification Ban on May 4 and the Governor signed it on May 7. Minn. Laws 2026, c. 72. Yet X.AI did not file its suit and seek emergency relief until nearly three months later. (*See* Compl.) X.AI has identified no irreparable injury sustained in the interim. And X.AI could have come to the Court promptly and likely received a preliminary injunction decision before the date of enactment. Indeed, the Attorney General recently defended three lawsuits challenging the

Minnesota legislature's prediction-market ban. That law was signed by the Governor on May 26, and it was scheduled to go into effect on August 1—the same day as Minnesota's Nudification Ban. But the prediction-market ban was challenged immediately, and preliminary injunctions were fully briefed and argued to allow the Court to render a decision before August 1. *See United States v. Minnesota*, No. 26-CV-2661 (KMM/DTS), 2026 WL 2150211, at *1 (D. Minn. July 27, 2026).[8] X.AI, by contrast, waited until Minnesota's Nudification Ban was about to go into effect, manufacturing an unnecessary emergency for the Court and the parties in a complex case at the intersection of cutting-edge technology and First Amendment doctrine.

X.AI's voluntary delay should not create a manufactured emergency for the Attorney General or the Court.

**II.    BEYOND DELAY, THERE ARE ADDITIONAL REASONS X.AI HAS NOT SHOWN IT WILL SUFFER IRREPARABLE HARM.**

Irreparable harm occurs when the movant has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages. *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1346 (8th Cir. 2024). The moving party "must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Roudachevski v. All–Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (internal quotation marks omitted). Bare allegations of what is likely to occur are insufficient to establish irreparable injury. *Packard Elevator v. I.C.C.*, 782 F.2d 112, 115

---

[8] *See* Minn. Laws 2026, c. 118. The case numbers for the three prediction market cases are 26-cv-2661 (KMM/DTS); 26-cv-2778 (KMM/DTS); and 26-cv-2841 (KMM/DTS). The lawsuits were filed on May 19, May 27, and June 3, respectively.

(8th Cir. 1986). Delay alone here undercuts any argument about irreparable harm. But there are additional reasons X.AI has not shown irreparable harm.

First, at most, X.AI claims monetary harm, which is not irreparable. *Corning Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 562 F. Supp. 279, 283 (E.D. Ark. 1983) ("[M]onetary loss, even where substantial, does not, in and of itself, constitute irreparable harm."). The monetary harm appears to be minor because X.AI can adjust its tool to avoid the issue. (Compl. ¶ 15; ECF No. 14 ¶¶ 19-20.) X.AI also has provided no concrete evidence to substantiate or quantify this claimed harm.

Second, to the extent X.AI argues a violation of the First Amendment is irreparable on its own, X.AI is wrong. As an initial matter, and as discussed more fully below, X.AI does not have a First Amendment interest at stake—its users do. Further, the Eighth Circuit has been clear that even for First Amendment cases, a party must make a clear showing of likely irreparable harm to justify a preliminary injunction, even when they present a First Amendment claim. *Kohls v. Ellison*, 166 F.4th 728, 732–33 (8th Cir. 2026); *Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*, 115 F.4th 889, 894 (8th Cir. 2024); *see also Caballo Coal Co. v. Ind. Mich. Power Co.*, 305 F.3d 796, 800 (8th Cir. 2002) (a failure to demonstrate irreparable harm, "standing alone, may be a sufficient basis to deny preliminary injunctive relief.").

Finally, X.AI's threadbare allegations about speculative commercial injury, readily compensable with damages, pales in comparison to truly irreparable harm. *See, e.g.*, *U.H.A. v. Bondi*, 817 F. Supp. 3d 752, 768 (D. Minn. 2026) (describing stories of "trauma and terror" favoring immediate relief when detainees were being "hurriedly transported . . . to

7

distant states, often without the ability to communicate with counsel, family, or the community"); *Frank V. v. Olson*, No. 26-CV-44 (JMB/DTS), 2026 WL 36120, at *1 (D. Minn. Jan. 6, 2026) (similar). The extraordinary equitable relief of a TRO is reserved for extraordinary and irreparable harm. X.AI's alleged injury is neither extraordinary nor irreparable.

X.AI has presented a thin record consisting of a single declaration that lacks specific and concrete detail about any purported harm and one exhibit—a policy—and has not shown it will suffer irreparable harm.

## III.    THE BALANCE OF HARMS AND PUBLIC INTEREST FAVOR THE ATTORNEY GENERAL.

The third and fourth factors—balance of harms and public interest—merge when the government is the non-movant. *Morehouse Enters., LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 78 F.4th 1011, 1018 (8th Cir. 2023). When applying the balance of harms factor, the key question is whether the movant's likely harm without a preliminary injunction exceeds the nonmovant's likely harm with a preliminary injunction. *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1347 (8th Cir. 2024). The purpose is not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward. *Id.*

Here, the Attorney General has a sovereign interest in enforcing a near unanimous and democratically enacted civil statute. Entry of an injunction would severely harm the government and the public who depend on the Attorney General to protect their rights, especially here as the law X.AI seeks to enjoin protects some of the most vulnerable among

8

us from reprehensible victimization. "Any time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). Moreover, each day Minnesota's Nudification Ban is stayed, more nudified images will proliferate and be used to demean, objectify, and harass women and children. X.AI's monetary interests should not outweigh the privacy interests of the people of the State of Minnesota.

## IV.    X.AI IS UNLIKELY TO SUCCEED ON THE MERITS IN THIS PRE-ENFORCEMENT FACIAL CHALLENGE.

A party seeking to preliminarily enjoin a state statute must demonstrate they are "likely to prevail on the merits." *Rounds*, 530 F.3d at 731–32. A plaintiff's failure to carry their burden on the likelihood-of-success factor is fatal to their case. *Id.* at 732; *Eggers v. Evnen*, 48 F.4th 561, 566 (8th Cir. 2022). And here, that burden is especially onerous because X.AI has brought this case as a pre-enforcement facial challenge, and facial challenges are "hard to win." *Moody*, 603 U.S. at 723. A facial First Amendment challenge can succeed only if a substantial number of the law's applications are unconstitutional when judged in relation to its plainly legitimate sweep. *Id*. at 723-24. A party's failure to meet their facial challenge burden is a sufficient basis to deny a TRO. *Cf. GLBT Youth in Iowa Schs. Task Force v. Reynolds*, 114 F.4th 660, 669–70 (8th Cir. 2024).

The Attorney General will have more arguments to raise once he is given an opportunity for full briefing on the preliminary injunction motion. But at this stage, suffice to say, X.AI faces several headwinds on the merits.

First, to the extent X.AI is seeking to bring claims on behalf of its users, it does not have third party standing. *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991) (test for third-party standing); *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (ordinarily, a plaintiff cannot bring claims to benefit third parties). To satisfy third-party standing, a party must show (1) the litigant suffered an injury-in-fact; (2) the litigant must have a close relationship to the third party; and (3) there must be some hindrance that prevents the third party's ability to protect his or her rights. *Powers*, 499 U.S. at 411. Even apart from the first prong, it is clear that X.AI cannot satisfy either the second or third prong. There is no indication third parties cannot bring claims on their own. And X.AI's interests are not aligned with that of its users because X.AI alleges that it already prohibits its users from engaging in the very conduct that the Nudification Ban proscribes—creating nudified images and videos. (ECF No. 14, at ¶ 9 (prohibiting users from "nudifying real persons").) And X.AI has sued its own users over nudification and admits that third party users' use of its products exposes it to risk, noting as a risk in SpaceX's IPO filing that:

> We may not have insight into, or control over, the practices of third parties who may utilize our AI technologies. As such, third parties have in the past used, and may in the future use, such AI technologies for improper purposes, including through the dissemination of illegal, inaccurate, defamatory or harmful content, intellectual property infringement or misappropriation, furthering bias or discrimination, cybersecurity attacks, including spear phishing and social engineering attacks, data privacy violations, other societal harms, including activities that threaten people's safety, financial security, or mental well-being on- or offline, or to develop competing technologies.[9]

---

[9]    SpaceX    IPO    S-1    Filing    at    29-31    46-47,    available    at https://www.sec.gov/Archives/edgar/data/1181412/000162828026036936/spaceexplorati ontechnologi.htm; Recording Law Editorial Team, "xAI Sues Grok User Over Alleged AI-

Second, X.AI itself does not have a First Amendment interest at stake. Instead, the only First Amendment interests arguably at stake are of its users. A company that produces a *tool* that a third party *may* use to *create* their own speech does not itself have a First Amendment interest. The cases X.AI cites all involve parties that were engaged in speech. *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 577 (1983) (newspaper); *Buckley v. Valeo*, 424 U.S. 1, 20-21 (1976) (per curiam) (discussing impact on contributor's ability to engage in expression and on candidates' ability to speak); *Murdock v. Pennsylvania*, 319 U.S. 105, 113–14 (1943) (canvassers/solicitors). Here, in contrast, X.AI is not engaging in speech.

Third, X.AI is unlikely to meet its facial-challenge burden because, as X.AI effectively concedes, Minnesota's law has several constitutional applications. For example, AI-generated pornographic images of children are entitled to no First Amendment protection, *New York v. Ferber*, 458 U.S. 747, 757 (1982), so Minnesota's law is plainly constitutional if Grok Imagine is used to generate those images. Similarly, obscene material is entitled to no First Amendment protection, *Miller v. California*, 413 U.S. 15, 23 (1972), so Minnesota's law is plainly constitutional if Grok Imagine is used to generate those images. And if Grok Imagine generates non-consensual sexual images, commonly known as "revenge porn," then those images are constitutionally unprotected too. *See, e.g.*, *Minnesota v. Casillas*, 952 N.W.2d 629, 643 (Minn. 2020). While X.AI alleges that Grok Imagine has sympathetic use cases, like coloring pages and cozy candle advertisements, it

---

Generated   Child   Sexual   Abuse   Material,"   RECORDING   LAW, https://www.recordinglaw.com/news/xai-grok-deepfake-user-lawsuit/ (July 16, 2026)

makes no allegation—and offers no evidence—about the prevalence of such use cases relative to the prevalence of dangerous use cases entitled to no constitutional protection. (Compl. ¶¶ 21–22.)

Fourth, X.AI ignores important limitations on the statute's scope. The statute exempts services that require the technical skill of a user to nudify an image or video. Minn. Laws 2026, c. 72. That means the tools that are targeted by the Nudification Ban are those that automate the creation of images and videos. Additionally, the ban implicitly exempts parody and satire, because nudification requires that "the altered or generated image or video is so realistic that a reasonable person would believe that the intimate part belongs to the identifiable individual." Minn. Laws 2026, c. 72 § 1, subd. 19(d)(2). That definition necessarily excludes parody and satire because parody is that which "cannot 'reasonably [be] interpreted as stating actual facts' about an individual." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (quoting *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 50 (1988)) (alteration in original); *see also Kohls v. Ellison*, No. 24-CV-3754 (LMP/DLM), 2025 WL 66765, at *4 (D. Minn. Jan. 10, 2025), *aff'd*, 166 F.4th 728 (8th Cir. 2026).

Fifth, Minnesota's Nudification Ban does not regulate content; instead, it regulates conduct—whether a technical tool can have a certain feature. *See Def. Distributed v. Att'y Gen. of N.J.*, 167 F.4th 65, 84–85 (3d Cir. 2026) (plaintiff did not allege that computer code allowing the creation of 3D printed guns was expressive so as to trigger First Amendment protections); *see also Minnesota v. TikTok*, Order Denying Motion to Dismiss Case No. 27-CV-25-15301, Index 148 (Henn. Cnty. Dist. Ct. Mar. 8, 2026) (concluding a lawsuit directed to TikTok's addictive features is about conduct, not speech, and therefore the First

Amendment does not bar the State's claims). Therefore, X.AI is not likely to succeed on the merits of its First Amendment content-based theory.

## CONCLUSION

The Attorney General requests that the Court deny the requested TRO or, in the alternative, convert the TRO motion to a preliminary injunction motion and set the motion on a normal briefing schedule. The Attorney General requests that its response to the preliminary injunction motion submissions (ECF Nos. 11-15) be due on August 19. If the Court permits additional preliminary injunction submissions by X.AI, the Attorney General respectfully requests 21 days after its subsequent filing to respond.

Dated: July 31, 2026

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

s/ **Janine Kimble**
PETER J. FARRELL (#0393071)
Acting Solicitor General
JANINE KIMBLE (#0392032)
MARGARET JACOT (#0346755)
MADELEINE DEMEULES (#0402648)
Assistant Attorneys General

445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2125
(651) 757-1415 (Voice)
(651) 282-5832 (Fax)
janine.kimble@ag.state.mn.us

*Attorneys for Defendant*

|#6419698-v3

13