**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| X.AI LLC,<br><br>Plaintiff,<br><br>v.<br><br>KEITH ELLISON, in his official capacity as Attorney General of Minnesota,<br><br>Defendant. | Case No. 0:26-cv-03425-DWF-DTS<br><br>Judge Donovan W. Frank<br><br>**REPLY IN SUPPORT OF X.AI LLC'S MOTION FOR PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

ARGUMENT ........................................................................................................3

I. xAI Is Likely To Prevail On The Merits Because HF 1606 Violates the First Amendment..........................................................3

A. xAI has a protected First Amendment interest at stake. .............3

B. xAI has standing to assert a First Amendment challenge to HF 1606 based on its users' constitutional interests...................7

C. HF 1606 draws content-based distinctions that trigger strict scrutiny. ..........................................................................10

D. HF 1606 cannot survive any form of heightened scrutiny, let alone strict scrutiny. ..........................................................12

E. HF 1606 is also facially overbroad. ..........................................18

II. The Remaining Factors Favor A Preliminary Injunction....................20

CONCLUSION ......................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*303 Creative LLC v. Elenis*,
600 U.S. 570 (2023)....................3

*Advantage Media, LLC v. City of Eden Prairie*,
405 F. Supp. 2d 1037 (D. Minn. 2005)....................8

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
594 U.S. 758 (2021)....................21, 23

*Ams. for Prosperity Found. v. Bonta*,
594 U.S. 595 (2021)....................18

*Ashcroft v. Free Speech Coal.*,
535 U.S. 234 (2002)....................8, 17

*Benisek v. Lamone*,
585 U.S. 155 (2018)....................22

*Brown v. Entm't Merchs. Ass'n*,
564 U.S. 786 (2011)....................3, 15

*Buckley v. Valeo*,
424 U.S. 1 (1976)....................4

*Carey v. Population Servs. Int'l*,
431 U.S. 678 (1977)....................8

*Chiles v. Salazar*,
146 S. Ct. 1010 (2026)....................4

*City of Austin v. Reagan Nat'l Advertising of Austin, LLC*,
596 U.S. 61 (2022)....................12

*City of Erie v. Pap's A.M.*,
529 U.S. 277 (2000)....................11

*Counterman v. Colorado*,
600 U.S. 66 (2023)....................19

*Craig v. Boren*,
429 U.S. 190 (1976)....................8

*Defense Distributed v. Att'y Gen. of New Jersey*,
167 F.4th 65 (3d Cir. 2026)....................6

*Diamond Alt. Energy, LLC v. EPA*,
606 U.S. 100 (2025)....................9

*FCC v. Pacifica Found.*,
438 U.S. 726 (1978)....................18

*Free Speech Coal., Inc. v. Paxton*,
606 U.S. 461 (2025)....................12

*Garcia v. Character Techs., Inc.*,
785 F. Supp. 3d 1157 (M.D. Fla. 2025)....................6

*Gordon v. Holder*,
632 F.3d 722 (D.C. Cir. 2011)....................21

*Green v. United States Dep't of Justice*,
111 F.4th 81 (D.C. Cir. 2024)....................6, 15

*Iancu v. Brunetti*,
588 U.S. 388 (2019)....................19

*Irizarry v. Yehia*,
38 F.4th 1282 (10th Cir. 2022)....................4

*Josephine Havlak Photographer, Inc. v. Vill. of Twin Oaks*,
864 F.3d 905 (8th Cir. 2017)....................11

*Kohls v. Ellison*,
166 F.4th 728 (8th Cir. 2026)....................22

*Kohls v. Ellison*,
2025 WL 66765 (D. Minn. Jan. 10, 2025)....................16

*Maixner v. Eidsness*,
182 F.4th 736 (8th Cir. 2026) ....................................................................21, 22

*McConnell v. FEC*,
540 U.S. 93 (2003)..................................................................................................7

*McCullen v. Coakley*,
573 U.S. 464 (2014)........................................................................10, 12, 17

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)..............................................................................................17

*Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*,
460 U.S. 575 (1983)................................................................................................4

*Minnesota Chamber of Commerce v. Choi*,
707 F. Supp. 3d 846 (D. Minn. 2023)....................................................................21

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024)....................................................................................5, 6, 20

*Ness v. City of Bloomington*,
11 F.4th 914 (8th Cir. 2021) ..............................................................................5, 6

*NetChoice v. Griffin*,
812 F. Supp. 3d 905 (W.D. Ark. 2025) ................................................................18

*NetChoice v. Griffin*,
831 F. Supp. 3d 816 (W.D. Ark. 2026) ...........................................................8, 22

*NetChoice, LLC v. Fitch*,
134 F.4th 799 (5th Cir. 2025) ................................................................................8

*Packingham v. North Carolina*,
582 U.S. 98 (2017)................................................................................................18

*Powers v. Ohio*,
499 U.S. 400 (1991)................................................................................................9

*R.A.V. v. City of St. Paul*,
505 U.S. 377 (1992)..............................................................................................11

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015)....................................................................................10, 11

*Reno v. ACLU*,
521 U.S. 844 (1997)....................................................................................13, 18

*Republican Party of Minn. v. White*,
416 F.3d 738 (8th Cir. 2005) ..........................................................................13

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
592 U.S. 14 (2020)...........................................................................................22

*Schmitt v. Rebertus*,
148 F.4th 958 (8th Cir. 2025) .........................................................................22

*Sec. of State of Md. v. Joseph H. Munson Co., Inc.*,
467 U.S. 947 (1984)...........................................................................................7

*Shamrock Hills, LLC v. Iowa*,
2026 WL 2330562 (8th Cir. Aug. 12, 2026) ......................................................6

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*,
502 U.S. 105 (1991)..........................................................................................13

*In re Social Media Adolescent Addiction/Pers. Injury Prods. Liab. Litig.*,
702 F. Supp. 3d 809 (N.D. Cal. 2023)................................................................6

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011)............................................................................................4

*State v. Casillas*,
952 N.W.2d 629 (Minn. 2020) .........................................................................14

*Telescope Media Grp. v. Lucero*,
936 F.3d 740 (8th Cir. 2019) .............................................................................4

*United States v. Stevens*,
559 U.S. 460 (2010)..........................................................................................19

*Video Software Dealers Ass'n v. Webster*,
968 F.2d 684 (8th Cir. 1992) ....................19

*Virginia v. Am. Booksellers Ass'n, Inc.*,
484 U.S. 383 (1988)....................7, 16

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989)....................18

**Statutes**

47 U.S.C. § 223....................13, 16

Minn. Stat. § 325E.91 ....................5, 10, 15

Minn. Stat. § 604.32....................19, 23

Minn. Stat. § 609.341....................13

Minn. Stat. § 617.261....................19

Minn. Stat. § 617.262....................13, 16, 19, 23

## INTRODUCTION

The State hopes this Court will bless a law the Legislature never passed. Leveraging charged rhetoric over legal reason, the State hardly confronts the actual text of HF 1606 and its deep constitutional defects. Again, xAI has never disputed that nonconsensual distribution of photorealistic sexually explicit images may be prohibited—as it already is under other laws. But the State cannot broadly trample the First Amendment to address a narrow problem.

The statute is subject to strict scrutiny because it is self-evidently content based: the violative conduct is determined by the specific *content* of the created image. And strict scrutiny prohibits the Legislature from enacting a content-based prohibition on image creation unless it can prove it is the least restrictive means of achieving a legitimate goal. The State—not xAI—bears that burden. As xAI has explained, HF 1606's capacious definition of "intimate parts" alone renders the statute constitutionally overbroad because its prohibition on depictions of inner thighs or male chests necessarily sweeps in content that is not "sexualized," "violent," or "pornographic." The State does not even *mention* this definitional problem until page 30 of its brief. And when the State finally gets to what the statute says, it still does not explain how a prohibition that includes, for example, male shirtlessness or inner thighs is narrowly tailored to sexually explicit material.

Nor does the State show how HF 1606 can survive strict scrutiny when it has no scienter, consent, or distribution component—allowing a platform to be held strictly liable when a woman alters an image of herself to see how she'd look in a bathing suit or alters a picture of her boyfriend (with his consent) to show him running on the beach. And when it comes to political parody, the State conjures a *post hoc* exception the Legislature did not actually include.

The State is also incorrect to claim that xAI lacks standing to challenge HF 1606. The State's argument that xAI lacks prudential standing to challenge this content-based restriction fails because xAI provides a software tool that is an important step in the creation of that expressive content. And the Supreme Court and Eighth Circuit have both repeatedly held that companies may assert the constitutional rights of their users in analogous situations.

That leaves the equitable considerations, which likewise strongly favor a preliminary injunction. xAI is unaware of any case (and the state does not cite one) where a party who moved before a law became effective was denied a preliminary injunction on the ground of unreasonable delay. And the loss of First Amendment rights by xAI's users—who have been restricted from using the service to create protected content since August 1—is independently sufficient to establish

irreparable injury. Finally, the State has no interest in enforcing an unconstitutional statute, and the equities thus favor xAI.

This Court should preliminarily enjoin HF 1606.

## ARGUMENT

### I. xAI Is Likely To Prevail On The Merits Because HF 1606 Violates the First Amendment.

#### A. xAI has a protected First Amendment interest at stake.

The State does not dispute that the images and videos users create with Grok Imagine are protected speech. For good reason: "All manner of speech—from pictures, films, paintings, drawings, and engravings, to oral utterance and the printed word—qualify for the First Amendment's protections." *303 Creative LLC v. Elenis*, 600 U.S. 570, 587 (2023) (citation modified). And like traditional mediums of expression, images and videos created using Grok Imagine "communicate ideas—even social messages—through many familiar literary devices … and through features distinctive to the medium." *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 790 (2011). "That suffices to confer First Amendment protection." *Id.*

Following the playbook of censors everywhere, the State asserts that xAI does not have a First Amendment interest because HF 1606 regulates conduct, not speech by addressing "certain feature[s]" of "technical tool[s]." Opp. 18-19, 21. But the relevant "feature" is the ability of AI-powered image generation to create speech.

Calling speech creation a “feature” or “conduct” changes nothing: “The First Amendment is no word game. And the rights it protects cannot be renamed away or their protections nullified by ‘mere labels.’” *Chiles v. Salazar*, 146 S. Ct. 1010, 1023 (2026) (citation omitted).

Likewise, states cannot avoid First Amendment scrutiny by isolating some purportedly non-speech component of protected activity. *See, e.g.*, *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 752 (8th Cir. 2019) (rejecting claim that filmmaking was mere “conduct” because the component acts “come together to produce finished videos that are ‘medi[a] for the communication of ideas’”); *Irizarry v. Yehia*, 38 F.4th 1282, 1289 (10th Cir. 2022) (government cannot restrict speech by “proceeding upstream and damming the source”). A law that precludes the publishing of books, for instance, does not become acceptable by banning “purchasing or using ink.” *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571 (2011); *see also Minneapolis Star & Tribune Co. v. Minn. Comm’r of Revenue*, 460 U.S. 575, 582 (1983); *Buckley v. Valeo*, 424 U.S. 1, 19 (1976).[1] HF 1606 further implicates

[1] The State claims these cases are inapposite because the plaintiffs in those cases were engaged in speech. Opp. 11. But the Court never suggested that sellers of paper and ink *lacked* a First Amendment interest, and it was unsurprising that the newspaper sued—rather than sellers—because the newspaper paid the tax. *Minneapolis Star*, 460 U.S. at 579. And in *Buckley* a “potential contributor” had

the First Amendment as to the creation of Grok Imagine itself. The development and operation of Grok Imagine itself is "speech" under the First Amendment because it is related to an "expressive purpose." *See Ness v. City of Bloomington*, 11 F.4th 914, 923 (8th Cir. 2021) (First Amendment protections apply to "an important stage of the speech process that ends with the dissemination of information"). Indeed, designing an image-generation tool is an inherently expressive exercise that requires aesthetic and editorial judgment at every step, including about what the tool will and will not create. And those choices are protected by the First Amendment. *See Moody v. NetChoice, LLC*, 603 U.S. 707, 740 (2024) (affording "First Amendment protection" to "expressive choices" made by social-media platforms, such as how to "display" third-party speech).

Far from focusing on "functional capabilities," Opp. 22, the statute expressly regulates how Grok Imagine can be used *to create speech*. The law prohibits an AI service from "allow[ing] a user to access, download, or use the … service to nudify an image or video" or from "nudify[ing] an image or video on behalf of a user." Minn. Stat. § 325E.91, subd. 2(a)(1)-(2). Whether xAI is liable thus turns entirely on whether an individual using the tool creates the type of speech the State seeks to ban.

---

standing to raise a First Amendment challenge even though contributions become expression only when "spent by a candidate or an association." 424 U.S. at 7, 21.

The State's cases do not apply here because each involved conduct "unrelated to an expressive purpose." *Ness*, 11 F.4th at 923. *Defense Distributed* addressed instructions for 3D-printed firearms, which the court concluded was "[p]urely functional code with no expressive purpose." *Defense Distributed v. Att'y Gen. of New Jersey*, 167 F.4th 65, 82, 84-85 (3d Cir. 2026). Grok Imagine, by contrast, makes images and videos—quintessential expressive outputs. The State's products-liability cases are even further afield; there, image filters and an AI app were held to be "products" for tort purposes—the courts did not hold that the use of such products to create speech would be unprotected by the First Amendment. *See In re Social Media Adolescent Addiction/Pers. Injury Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 852-53 (N.D. Cal. 2023); *Garcia v. Character Techs., Inc.*, 785 F. Supp. 3d 1157, 1180 (M.D. Fla. 2025). And unlike the state court decision in *Minnesota v. TikTok*, this statute does not concern addictive features like endless scrolling, Opp. 22, but rather Grok Imagine's role in creating expressive content.[2] *See Moody*, 603 U.S. at 740.

[2] *Shamrock Hills, LLC v. Iowa* is inapposite because it held that regulating the profession of insurance adjusting did not involve expressive conduct. 2026 WL 2330562, at *3-4 (8th Cir. Aug. 12, 2026). And *Green v. United States Dep't of Justice* held that "trafficking" in technology that circumvents digital locks is "not inherently expressive." 111 F.4th 81, 96 (D.C. Cir. 2024).

Because xAI's creation and operation of Grok Imagine is an important step in the process of creating and disseminating speech, xAI has standing to challenge the state's speech restrictions. Any other interpretation would frustrate the fundamental communicative purpose of the First Amendment. "Control any cog in the machine, and you can halt the whole apparatus. License printers, and it matters little whether authors are still free to write. Restrict the sale of books, and it matters little who prints them." *McConnell v. FEC*, 540 U.S. 93, 251 (2003) (Scalia, J., concurring in part and dissenting in part).

### B. xAI has standing to assert a First Amendment challenge to HF 1606 based on its users' constitutional interests.

The State concedes that xAI's users have First Amendment interests at stake, Opp. 12, and xAI has standing to represent those interests.

The requirements for third-party standing are more lenient in the First Amendment context, where a litigant may "challenge a statute not because [its] own rights of free expression are violated, but because … the statute's very existence may cause others not before the court to refrain from constitutionally protected speech." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392-93 (1988) (allowing booksellers to assert the rights of bookbuyers); *Sec. of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956 (1984) (unique concerns in First Amendment context "justify a lessening of prudential limitations on standing"). The Supreme

Court has applied that principle to allow distributors of protected speech to assert their audiences' rights. *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 252-53 (2002). And, outside the First Amendment context, it has similarly allowed vendors and providers to assert their customers' rights. *See Craig v. Boren*, 429 U.S. 190, 195 (1976); *Carey v. Population Servs. Int'l*, 431 U.S. 678, 682-84 (1977).

xAI can likewise assert the rights of its users. HF 1606 directly regulates xAI, and the "threatened imposition of governmental sanctions" on the company has forced it to restrict Grok Imagine's image-editing features. *Craig*, 429 U.S. at 195; Reply Declaration of Naser Baseer ("Reply Decl.") ¶ 19. If HF 1606 is unconstitutional, then "enforcement of [it] against" xAI "would result indirectly in the violation of third parties' rights." *Id.* xAI may therefore resist the State's efforts to restrict its operations "by acting as [an] advocate[] of the rights of third parties who seek access" to Grok Imagine. *Id.*; *see also NetChoice, LLC v. Fitch*, 134 F.4th 799, 807 (5th Cir. 2025) ("[I]t is plain that an online platform is not barred by prudential standing when it asserts its users' First Amendment rights …."); *NetChoice v. Griffin*, 831 F. Supp. 3d 816, 828 (W.D. Ark. 2026) ("NetChoice has third-party standing to assert the First Amendment rights of its members' users").[3]

---

[3] *Advantage Media, LLC v. City of Eden Prairie*, 405 F. Supp. 2d 1037, 1044 (D. Minn. 2005), is not to the contrary: it denied a *commercial* advertiser third-party

The State insists that "X.AI's interests diverge from those of its users" because the company "penalizes and bans" some users for misbehavior. Opp. 18. But xAI's terms of service prohibit only "illegal, harmful, or abusive" uses of the service. Dkt. No. 14-1. They do not ban users from creating countless images that neither violate private rights nor constitute abusive conduct but that are nonetheless banned by the sweeping terms of HF 1606. Dkt. Nos. 14, ¶ 12 & 14-1. The State cannot bar xAI from representing users engaged in constitutionally protected expression just because xAI polices different misbehavior by other users.

There also are "practical barriers" that would hinder the ability of an individual user to bring suit. Because HF 1606 regulates *only* service providers, users may struggle even to establish Article III standing. *See Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 112 (2025). Even without that hurdle, the "small financial stake involved and the economic burdens of litigation" and need to give up anonymity to advocate disfavored speech would be a further bar. *Powers v. Ohio*, 499 U.S. 400, 415 (1991). xAI—facing a $500,000-per-image penalty—faces no such barriers and has the requisite "adversarial zeal" to defend its users' First Amendment rights.

---

standing because its interests were not "consistent with" those of *non-commercial* advertisers.

### C. HF 1606 draws content-based distinctions that trigger strict scrutiny.

A law is content-based when it "draws distinctions based on the message a speaker conveys," *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015), or can be enforced only by "examin[ing] the content of the message that is conveyed," *McCullen v. Coakley*, 573 U.S. 464, 479 (2014). By its plain terms, HF 1606 singles out one subject matter—images depicting specific anatomical areas—for different treatment, and the statute can be enforced only by reference to what the finished image depicts. A user may edit a photograph to change its background, soften its lighting, or alter a hairstyle, but the same edit that reveals an inner thigh or a bare chest exposes the provider to a $500,000 penalty. Minn. Stat. § 325E.91, subds. 1(d), 2(a). That is the most "obvious" form of content discrimination. *Reed*, 576 U.S. at 163.

The State's arguments to the contrary largely rehash its facile contentions that xAI is not engaged in expressive activity and that the statute regulates only conduct, not speech. *See* Opp. 21-22. Those arguments fail for the reasons described above. *See supra* I.A.

The State's appeal to the law's purposes, Opp. 23 (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)), is unavailing because those purposes are themselves defined by content. *See* Opp. 27 (State attempting to limit sexual

images). Indeed, the State does not even attempt to offer a purpose for the statute "unrelated to the content of expression." *Josephine Havlak Photographer, Inc. v. Vill. of Twin Oaks*, 864 F.3d 905, 914 (8th Cir. 2017). Moreover, a law that is content based on its face triggers strict scrutiny "regardless of the government's benign motive." *Reed*, 576 U.S. at 165. And although the First Amendment does not prohibit distinctions within a category of *proscribable* speech, *see R.A.V. v. City of St. Paul*, 505 U.S. 377, 387-88 (1992), HF 1606 reaches far beyond any such category, extending to non-obscene images, political parody, and images made with consent.

As a fallback, the State argues that nudity is not "inherently expressive." Opp. 23 (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) (plurality op.). But *City of Erie*, which addressed a statute proscribing public nudity, concluded only that "[b]eing 'in a state of nudity' is not an inherently expressive condition." *City of Erie*, 529 U.S. at 289. That is irrelevant here because HF 1606 does not target public nudity. Instead, it addresses the creation of *images* that the statute (mis)defines as "nudified." The creation of such images is plainly expressive regardless of the level of undress. And it is difficult to comprehend the State's claim that images of dramatic landscapes or individuals with soft lighting—which would include some of the most iconic art ever created—are not "inherently expressive." Opp. 24-25. Put

simply, the State cannot justify the statute on the basis that some images are too dangerous to allow while simultaneously arguing that the statute's application is not based on the content of the created images.[4]

### D. HF 1606 cannot survive any form of heightened scrutiny, let alone strict scrutiny.

HF 1606 is facially invalid under strict scrutiny because it is overinclusive and there are far less restrictive alternatives.[5] And even if HF 1606 were subject only to intermediate scrutiny, it would still fail because it burdens substantially more speech than necessary to further the State's asserted interests.

**1.** Strict scrutiny is "the most demanding test known to constitutional law," "fatal in fact absent truly extraordinary circumstances," *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 484-85 (2025), and it requires the State to prove that HF 1606 is "the least restrictive means of achieving a compelling state interest," *McCullen*,

---

[4] In *City of Austin v. Reagan National Advertising of Austin, LLC*, 596 U.S. 61 (2022) (Opp. 25), the challenged sign code was content neutral because it "require[d] an examination of speech" only "in service of drawing neutral, location-based lines." *Id.* at 69. HF 1606, by contrast, regulates the content the created images.

[5] The statute is also unconstitutional as applied to xAI because xAI bars using its platform for abusive purposes and attempts to block those uses. xAI nevertheless could be liable under the statute even if a user violated its terms of service and evaded its technological controls. Given the absence of a mens rea requirement or good-faith safe harbor, any application of the statute against xAI would violate the First Amendment.

573 U.S. at 478. While the parties agree the State has a compelling interest in preventing the nonconsensual dissemination of AI-generated sexually explicit images,[6] HF 1606 "sweep[s] too broadly," burdening more protected speech than that interest requires. *Republican Party of Minn. v. White*, 416 F.3d 738, 751 (8th Cir. 2005) (en banc).

To start, the statute borrows its definition of "intimate part" from the criminal-sexual-contact statute, Minn. Stat. § 609.341, subd. 5, rather than using the narrower definitions in the State's own deepfake statute, § 617.262, subd. 1(f), or the federal TAKE IT DOWN Act, 47 U.S.C. § 223(h)(1)(B) & (E) (citing 15 U.S.C. § 6851(a)(5)). The State barely mentions the sweep of the statute's definition, even though it extends the law well beyond the creation of "image-based sexual violence" that it supposedly targets. Opp. 27 (citation modified). The State asserts that "dignitary interests" are "at stake" even when an image is altered merely to show a

[6] The State's assertion that harm occurs when images are created, Opp. 30 & n.27, is in tension with its focus on harms it believes are caused by dissemination, *see* Opp. 2-8 (examples involve *dissemination* of nonconsensual images—not creation). But any interest in prohibiting the creation of non-distributed images still would not cure the Act's overinclusiveness. *See Reno v. ACLU*, 521 U.S. 844, 877-78 (1997); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 121-23 (1991).

person in a bathing suit, Opp. 30, but the State does not contend that it has a compelling interest in protecting these undefined "dignitary interests."[7]

The statute also omits every element that would narrowly tailor the regulation to the asserted harm: consent, scienter, dissemination, a safe harbor for providers that police misuse, and any exemption for images of artistic, political, medical, scientific, religious, or educational value. Mot. 15-19. The State cannot disown those omissions: indeed, it successfully defended its revenge-porn statute as narrowly tailored precisely because it contained many of those safeguards. *See State v. Casillas*, 952 N.W.2d 629, 643 (Minn. 2020) (adopting the State's argument). Because it lacks such safeguards, HF 1606 reaches shirtless men, images made with consent (including images of the user himself), medical and religious illustrations, political parody, and images never disseminated.

The State's attempts to satisfy strict scrutiny are not serious. The State protests that HF 1606 "does not prohibit content with … expressive value[]" because "the public may still create such content" with different tools, such as Photoshop. Opp. 31. But that is no answer. The First Amendment protects the choice of medium,

---

[7] The State never identifies any "narrowing constructions" from the Minnesota Supreme Court to which this Court might defer. Opp. 30 n.28.

and the State could not justify an over-inclusive ban on websites containing certain protected content merely because it allows that same content in books. And contrary to the State's assertion, AI-based image generation is not "inextricably linked" to unlawful use. Opp. 28-29. Grok Imagine's output—including image alteration involving the removal or changing of clothing—includes substantial amounts of protected expression, including core political speech. *Contra Green*, 111 F.4th at 103 ("act of circumventing technological protection measures often has no connection to speech at all"). That Grok Imagine automates what once demanded manual skill does not lower the protection its users' expression enjoys, for "the basic principles of freedom of speech … do not vary when a new and different medium for communication appears." *Brown*, 564 U.S. at 790 (citation modified).

The State also has no cogent response to the fact that HF 1606 unconstitutionally punishes parody or satire. The State chose to bar images where a reasonable viewer would think "the *intimate part* belongs to the identifiable individual." Minn. Stat. § 325E.91, subd. 1(d)(2) (emphasis added). That definition turns on the realism of the fabricated anatomy, not the authenticity of the scene. A shirtless image of President Trump in the reflecting pool, atop the White House, or

struggling through the desert, would all be actionable if his "intimate parts" appeared genuine. The statute has no exemption for images that, taken as a whole, "cannot reasonably be interpreted as stating actual facts." Opp. 32 (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)) (citation modified).

The State points to *Kohls v. Ellison*, 2025 WL 66765 (D. Minn. Jan. 10, 2025), which held that Minnesota's election-deepfake law does not cover parody because it applies only to images "so realistic that a reasonable person would believe it depicts speech or conduct of an individual who did not in fact engage in" it. *Id.* at *4 (quoting Minn. Stat. § 609.771, subd. 1(c)(1)). But HF 1606 contains no comparable exemption for images depicting individuals in unrealistic settings or performing unrealistic activities. The lesson from Minnesota's election-deepfake law, its sexual deepfake law (Minn. Stat. § 617.262, subd. 6), and the federal TAKE IT DOWN Act (47 U.S.C. § 223(h)(3)(A)(iii))—all of which *do* exempt parody or matters of public importance—is that exemptions like these are key to constitutional tailoring. That exemption is absent here, and the State cannot now "rewrite [the] state law to conform it to constitutional requirements." *Am. Booksellers*, 484 U.S. at 397.

The State next contends that HF 1606 is necessary because existing statutes have not "staunched the tide" of abusive nudification. Opp. 36. But the choice is not between *no statute* targeting AI platforms and the current HF 1606. Narrow tailoring

requires the State to show that "alternative measures that burden substantially less speech would fail to achieve" its interests. *McCullen*, 573 U.S. at 495. Yet the State does not explain why a more precise statute would fail to achieve its interests. Instead, it tacitly concedes that HF 1606 was written broadly to reach image-alteration "technology" itself. Opp. 29 (asserting the tool has no "legitimate applications").

Pivoting, the State emphasizes that the statute does not ban all nude images and videos or all modified images. Opp. 35. The First Amendment is not satisfied, however, merely because the Legislature could have adopted an even *more* unconstitutional statute. Regardless of whether the statute effectuates a "total ban" on image alteration, *id*., the statute punishes AI platforms involved in the creation of wide swaths of protected speech.

Finally, the State contends that the difficulties of curbing illegal conduct "unleashed by technology" may justify a broad remedial statute. *Id*. at 36 (discussing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 929-30 (2005)). But *Grokster* was a copyright case, and the First Amendment strikes the opposite balance: "the possible harm to society in permitting some unprotected speech to go unpunished *is outweighed* by the possibility that protected speech of others may be muted." *Ashcroft*, 535 U.S. at 255 (emphasis added). The State suggests that image-

alteration presents "special First Amendment problems." Opp. 36-37 (quoting *FCC v. Pacifica Found.*, 438 U.S. 726, 748 (1978)). But the Court has declined to extend the same rationale used to restrict public "broadcasting"—which "has received the most limited First Amendment protection," *Pacifica*, 438 U.S. at 748—to the internet, *see Reno*, 521 U.S. at 867-70.

**2.** Even if intermediate scrutiny applied, Opp. 25-26, 33, HF 1606 would not pass muster. A content-neutral restriction on speech must still be "narrowly tailored to serve a significant governmental interest" and "leave open ample alternative channels for communication." *Ward*, 491 U.S. at 791. HF 1606 flunks this test for the same reasons it is not narrowly tailored under strict scrutiny. *See Packingham v. North Carolina*, 582 U.S. 98, 107-08 (2017) (striking down under intermediate scrutiny ban on sex offenders' social-media access to reach narrow harm); *NetChoice v. Griffin*, 812 F. Supp. 3d 905, 924 (W.D. Ark. 2025) (enjoining law restricting social-media platform features as insufficiently tailored to State's interest in protecting minors); Reply Decl. ¶¶ 19-24 (restrictions for all Minnesota users).

### E. HF 1606 is also facially overbroad.

A statute facially violates the First Amendment if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep," *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021), such that

its "impermissible applications … far outnumber any permissible ones," *United States v. Stevens*, 559 U.S. 460, 481 (2010). That test is readily satisfied here. Mot. 23-25.

At the outset, Minnesota fails to identify *any* scenario in which HF 1606 could constitutionally be applied to an AI platform. Minnesota suggests that HF 1606 targets unprotected speech like obscenity, artificial child sexual abuse material, and "revenge porn." Opp. 20. But the First Amendment requires states to impose a "subjective mental-state requirement" before punishing even *unprotected* forms of speech like obscenity. *Counterman v. Colorado*, 600 U.S. 66, 75 (2023); *see also Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 690 (8th Cir. 1992), and HF 1606 imposes strict liability. HF 1606 thus stands in contrast to Minnesota's revenge porn and deepfake statutes, both of which contain mens rea requirements. Minn. Stat. § 617.261, subd. 1; § 604.32, subd. 2(a)(1); § 617.262, subd. 2.

Moreover, if obscenity, artificial child sexual abuse materials, and "revenge porn" were the state's concern, it could have tailored its law to those harms. *See Iancu v. Brunetti*, 588 U.S. 388, 398-99 (2019) (overbroad law not saved by some potentially constitutional applications); *Stevens*, 559 U.S. at 481 (same). The state

also provides no evidence regarding the actual volume of these harms.[8] And as explained, HF 1606 reaches a substantial amount of protected conduct. *See supra*; Mot. 15-23.

The State's principal response is to shift the State's burden to xAI, claiming that xAI has not developed an evidentiary record comparing the Act's protected applications to its unlawful ones. Opp. 37-39. But HF 1606's overbreadth is apparent from its text and the applications catalogued above. The State's reliance on *NetChoice* is misplaced because there it was unclear how the challenged laws applied across the many very different platforms and functions—from social-media feeds to direct messaging to ride-sharing. 603 U.S. at 724. HF 1606 presents no such uncertainty; the Act operates the same across all AI platforms. *See supra* I.D.

## II. The Remaining Factors Favor A Preliminary Injunction.

HF 1606's broad restrictions are currently abridging the First Amendment rights of both xAI and Grok Imagine users. It is black-letter law that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably

---

[8] The State insinuates that Grok Imagine was used to generate edited images resulting in 70,000 reports to the National Center for Missing and Exploited Children in 2026. Opp. 26-27 (citing Compl. ¶ 26). That insinuation is false. That number includes reports based on thousands of photographs and videos uploaded to Grok that involved no image alteration.

constitutes irreparable injury." *Maixner v. Eidsness*, 182 F.4th 736, 738 (8th Cir. 2026). Beyond that, xAI is suffering irreparable economic injury: it is expending substantial resources to comply with the Act. *See* Reply Decl. ¶ 22. Those compliance costs are irreparable because xAI cannot recover them from the State even if it prevails. *See, e.g.*, *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 765 (2021) (per curiam).

Nor did xAI unreasonably "delay" in seeking a preliminary injunction. Opp.11. xAI filed suit before HF 1606 *even took effect*, and only two and a half months after the legislature enacted it. *See Minnesota Chamber of Commerce v. Choi*, 707 F. Supp. 3d 846, 869 (D. Minn. 2023) (delay no basis to deny relief where the plaintiff moved "roughly five months after the statute passed" and "before the statute bec[a]me effective"). That makes sense because "[a] motion seeking to enjoin a statute's enforcement before the statute may legally be enforced is timely—or at least not late—by definition." *Gordon v. Holder*, 632 F.3d 722, 724 (D.C. Cir. 2011). The State identifies *no* case from *any* jurisdiction denying relief based on delay where the plaintiff sued before the challenged law took effect. That some litigants chose to challenge some other statute faster does not make xAI dilatory. Opp. 11-12. Filing just over two months after enactment and before the statute's effective date is "reasonable diligence" and the State's cases do not hold otherwise. *See, e.g.*,

*Benisek v. Lamone*, 585 U.S. 155, 159 (2018) (plaintiff waited six years after challenged governmental action); *Kohls v. Ellison*, 166 F.4th 728, 732 (8th Cir. 2026) (plaintiff waited sixteen months after legislature enacted challenged provision).

Finally, the State asks the Court to disregard the First Amendment harms Grok Imagine users will face. Opp. 12, 16, 18-19. But a plaintiff with standing to assert a third party's First Amendment rights may rely on that third party's irreparable harm. *See, e.g.*, *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (resting irreparable-harm finding on adherents' inability to attend religious services rather than injury to the plaintiff institutions); *Griffin*, 831 F. Supp. 3d at 828 (third party standing to represent users' First Amendment interests), 835 (NetChoice has shown "irreparable injury"). The State's lone First Amendment case, *Maixner v. Eidsness*, is inapposite because the plaintiffs there claimed no "immediate threat" to their speech rights and could not show that "monetary relief would be insufficient." 182 F.4th at 739. Here, by contrast, xAI has been compelled to restrict its service in ways that block protected speech, Reply Decl. ¶ 22, so its users' First Amendment rights are currently infringed and non-redressable.

The balance of equities likewise favors an injunction because "it is always in the public interest to protect constitutional rights," *Schmitt v. Rebertus*, 148 F.4th

958, 970 (8th Cir. 2025) (citation modified). The State invokes its "sovereign interest" in enforcing statutes, Opp. 14. But that presumption applies only to valid laws. The State has no interest in enforcing an unconstitutional one, and it cannot "act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors*, 594 U.S. at 766.

The State's warning that "each day [the Ban] is stayed, more nudified images will proliferate," Opp. 15, is overstated. Abusive, nonconsensual nudification is already unlawful under Minnesota's deepfake and revenge-porn statutes, Minn. Stat. §§ 617.262, 604.32, and xAI prohibits and works to block it. Reply Decl. ¶ 14. An injunction leaves those protections untouched and removes only HF 1606's additional reach into protected speech.

**CONCLUSION**

For the foregoing reasons, xAI respectfully requests that the Court preliminarily enjoin Attorney General Ellison from enforcing HF 1606, both as applied to xAI and on its face.

Dated: August 17, 2026

Respectfully submitted,

*/s/ Todd A. Noteboom*
Todd A. Noteboom (#0240047)
Andrew P. Leiendecker (#0399107)
Sarah R. Almquist (#0403469)
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
todd.noteboom@stinson.com
andrew.leiendecker@stinson.com
sarah.almquist@stinson.com

Robert E. Dunn (*pro hac vice*)
EIMER STAHL LLP
1999 S. Bascom Ave., Suite 1025
Campbell, CA 95008
(408) 889-1690
RDunn@eimerstahl.com

Johnathan Hall (*pro hac vice*)
EIMER STAHL LLP
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604
(312) 660-7600
jhall@eimerstahl.com

*Attorneys for Plaintiff X.AI LLC*