**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| X.AI LLC,<br><br>Plaintiff,<br><br>v.<br><br>KEITH ELLISON, in his official capacity, as Attorney General of Minnesota,<br><br>Defendants. | Case No. 0:26-cv-03425-DWF-DTS<br><br>Hon. Judge Donovan W. Frank<br><br>**DECLARATION OF NASER BASEER IN SUPPORT OF X.AI LLC'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

I, Naser Baseer, declare as follows:

1. I am over the age of 18 and am in all respects competent and qualified to make this declaration.

2. All facts stated herein are based on my personal knowledge, information, and belief and the records and information reasonably available to me as part of my employment.

3. I lead the product counsel team at xAI. I have held this position since November 2025. I serve as a primary legal advisor to product, engineering, design, and related business teams at xAI. My professional responsibilities include counseling the Grok model team, including those working on the image- and video-generation model known as Grok Imagine. My work focuses on ensuring compliance

with legal and regulatory requirements that arise while building, launching, and iterating on Grok Imagine products and services. My role gives me hands-on involvement with the development, capabilities, and operation of Grok Imagine.

4. I have a Bachelor's degree in Neuroscience from University of California, Riverside. I also have a Juris Doctor degree from Chicago-Kent College of Law, IIT.

5. This background equips me with the direct, practical experience needed to address the matters set forth in this declaration.

6. xAI's flagship artificial intelligence model Grok is what is known as a multimodal model. Multimodal models are among the most powerful artificial intelligence models available today, and they are driving advancements in everything from medicine, robotics, and defense to autonomous driving, agriculture, and manufacturing. These models are trained on diverse datasets and designed to distill the patterns and structures of natural language, sound, images, and video. They interpret and respond to user queries in an intelligent, human-like way. For example, if a user prompts an LLM with "We saw the Golden Gate Bridge on our trip to," then it may produce "San Francisco" as an output.

7. xAI uses the Grok Imagine model to create new images and short videos from ordinary written or spoken prompts. The Imagine model can also edit or animate images supplied by users, including by removing objects, changing

scenery, applying art styles, restoring damaged photographs, and virtually trying on clothes or accessories. Users create or edit content with Grok Imagine by typing or speaking a short description. No artistic training, technical knowledge, or specialized software is required.

8. Grok Imagine is available to users in all 50 states, including Minnesota, through the Grok smartphone application, the website Grok.com, and an application programming interface (API). Developers and businesses can integrate the capabilities via the API into their own products and workflows. Many Grok Imagine users are located in Minnesota.

9. Users of Grok Imagine create and share illustrations, concept art, animated family photographs, memes, product mockups, and political satire. The subject matter spans news, politics, religion, science, education, commerce, and personal and family life. Minnesota users create and share content across that same range.

10. Grok Imagine is capable of editing existing images in a way that depicts an identifiable person's inner thigh or (if male) breast in a manner that is so realistic that a reasonable person would believe that the inner thigh or breast belongs to the depicted individual. This would include images like those referenced in the Complaint, whether or not the original image depicts someone who is a public figure.

11. Before using Grok Imagine, consumers and businesses must agree to xAI's terms of service. Those terms are publicly available at https://x.ai/legal/terms-of-service, or in the case of businesses or developers, https://x.ai/legal/terms-of-service-enterprise. The terms prohibit using the service for any illegal, harmful, or abusive activities or any other behavior that violates the Acceptable Use Policy. A true and correct copy of that policy, available at https://x.ai/legal/acceptable-use-policy, is attached hereto as Exhibit A.

12. The Acceptable Use Policy prohibits using the service in ways that violate a person's privacy or right of publicity, including undressing or nudifying real persons or otherwise altering a real person's image or likeness to depict them in an intimate or sexual context; depicting likenesses of persons in a pornographic manner; and sexualizing or exploiting children. The policy also prohibits stripping, altering, or circumventing embedded provenance metadata or watermarks and circumventing xAI's protective measures and safety mitigations.

13. xAI employs sophisticated technical controls and safety mitigations intended to prevent prohibited uses. Users who successfully evade those controls violate the company's terms of service.

14. xAI detects and blocks attempts to nudify images and to create sexualized content, removes resulting content where it is generated, and terminates

the accounts of users who make such attempts. xAI regularly terminates accounts for violations of the Acceptable Use Policy provisions described in paragraph 12.

15. Where required or appropriate, xAI reports violations to law enforcement and to the National Center for Missing & Exploited Children.

16. xAI has also sued users who circumvented its technical controls to generate prohibited images. *See X.AI LLC v. Harwood*, No. 7:26-cv-00078 (N.D. Tex. filed July 14, 2026).

17. Content moderation for generative image models is inherently probabilistic. Classifiers and filters operate on predicted likelihoods rather than certainties, and no combination of controls can guarantee that no user will ever succeed in moderating a prohibited image. Some users also actively attempt to circumvent those controls, including through indirect prompting and by iterating on prompts that have been refused.

18. Before August 1, 2026, Minnesota users had full access to Grok Imagine's image-editing features and used them.

19. On August 1, 2026, xAI implemented additional controls on Grok Imagine's image-editing feature for users located in Minnesota solely due to the risks imposed by Minnesota HF 1606. To implement these restrictions, xAI had to design, test, and deploy geographically targeted controls within Grok Imagine's image-editing pipeline. Between July 24, 2026 and August 1, 2026, engineers on the Grok

Docusign Envelope ID: 47923523-EB3E-820E-814D-D55A6ABDBA14


Imagine team and other xAI employees worked on designing, testing, and implementing these controls. That work consumed a substantial amount of their time over that period and diverted them from other product development projects. xAI continues to devote engineering time to maintaining, fine-tuning, and monitoring the new restrictions.

20. Minnesota users who rely on the image-editing capabilities of Grok Imagine for the purposes described above no longer have access to those capabilities through xAI's service now that the planned restrictions have taken effect.

21. Restricting Grok Imagine's image-editing features for users located in Minnesota has impacted product experience in the state. Actual Grok Imagine image editing requests that were blocked in Minnesota by xAI's new HF 1606 controls include, among other things: (a) requests to edit an image of a man to depict him playing volleyball shirtless on a beach, (b) requests to edit an image of a person wearing shorts to depict that person in shorts, for example, running shorts, that expose the inner thigh; and (c) requests to edit an image of a person wearing a turtleneck to depict that person in a V-neck that reveals some cleavage.

22. Since xAI implemented the new controls in Minnesota in direct response to HF 1606, the rate of moderation in Minnesota for image-editing prompts has surged. The moderation rate for Minnesotans using Grok Imagine to edit existing images is over 10% higher than it would have been under the controls in place before

HF 1606 went into effect. In other words, over 10% more requests to edit existing images using Grok Imagine in Minnesota are now being blocked than would have been the case if HF 1606 were not in effect.

23. xAI's engineering team has determined that there is also an unintended consequence, specifically an increase in false positive rate, meaning that the new controls are moderating the generation of images that may not even be prohibited by Minnesota HF 1606. Because moderation is inherently probabilistic and the penalties for violating HF 1606 are so severe, it was necessary to implement conservative controls to minimize the risk that Grok Imagine generates a prohibited image. xAI engineers are continually refining the new moderation controls to reduce the rate of false positives.

24. The increase in moderation will result in the loss of Minnesota users and related business for xAI, and xAI expects to lose Minnesota subscribers and subscription revenue as a result. xAI also expects to lose the goodwill of Minnesota users who find that a feature available in every other State is unavailable to them.

25. But for Minnesota HF 1606 and the penalties associated with it, xAI would continue to offer the image-editing feature to Minnesota users as it did before August 1, 2026.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Docusign Envelope ID: 47923523-EB3E-820E-814D-D55A6ABDBA14


Executed at Seattle, Washington on August 17, 2026.

Signed by:
Naser Baseer
30FEB0E2BC0F4F1...

/s/ ______________________________
Naser Baseer