**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| X.AI LLC,<br><br>Plaintiff,<br><br>v.<br><br>KEITH ELLISON, in his official capacity, as Attorney General of Minnesota,<br><br>Defendant. | Case No. 0:26-cv-03425-DWF-DTS<br><br>Hon. Donovan M. Frank |

# STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA


STANLEY E. WOODWARD, JR.
*United States Associate Attorney General*

JOHN K. ADAMS
*Deputy Associate Attorney General*

MICHAEL WEISBUCH
*Senior Counsel to the Associate Attorney General*

HENRIQUE CARNEIRO
*Counsel to the Associate Attorney General*

*Counsel for the United States of America*

# TABLE OF CONTENTS

INTERESTS OF THE UNITED STATES ........................................................ 1

DISCUSSION ........................................................................................ 4

I. Narrowly Tailored Federal Law Combating Computer-Facilitated Sexual Harm and Obscenity ........................................................ 5

II. Minnesota's Law Combating Computer-Facilitated Sexual Harm and Obscenity (HF 1606) Sweeps More Broadly than Federal Law ............. 9

CONCLUSION ........................................................................................ 11

## INTERESTS OF THE UNITED STATES

The United States submits this Statement of Interest pursuant to 28 U.S.C. § 517, which permits the Attorney General of the United States to direct any officer of the United States Department of Justice "to attend to the interests of the United States" in any case pending in the United States.[1]

The United States shares common interests with the parties. Like the Attorney General of Minnesota, the United States has a compelling interest in combating harmful computer-generated sexual imagery and obscenity. And like xAI, the United States has an interest in promoting the safe and productive use of Artificial Intelligence (AI). The United States thus submits this Statement of Interest to inform this Court about federal law prohibiting computer-facilitated sexual harm and obscenity, alongside its national policies aimed at fostering American AI dominance. Unlike House File 1606 (HF 1606), the United States' laws are carefully calibrated to protect against destructive computer-generated sexual harm and obscenity while not overburdening constitutional and productive uses of AI.

---

[1] The statute "contains no time limitation and does not require the Court's leave." *Gil v. Winn Dixie Stores, Inc.*, 242 F. Supp. 3d 1315, 1317 (S.D. Fla. 2017); *accord Karnoski v. Trump*, 2018 WL 4501484, at *2 (E.D. Mich. Sept. 20, 2018) (same). Nor does federal law limit the Attorney General's involvement to filing statements of interests. To the contrary, the Attorney General may intervene in any case to vindicate the supremacy of federal law. As discussed below, House File 1606 sweeps more broadly than federal law, implicating the First Amendment. The United States reserves all rights.

***Fighting Computer-Facilitated Sexual Harm and Obscenity***. AI technology "enables the creation of convincing synthetic content" that can be criminal or harmful. FBI, *Internet Crime Report 2025*, at 39 (2025), https://perma.cc/7AEL-L2SR. Just like Minnesota, the United States maintains compelling interests in preventing the criminal and harmful use of AI tools that, for example, create revenge pornography, child sexual abuse material (CSAM), or obscenity, or that disclose nonconsensual private information or body parts. *See, e.g.*, U.S. Department of Justice, *Child Sexual Abuse Material*, https://perma.cc/8VEJ-CVRN.

Consistent with these interests, federal law has long proscribed the possession with intent to sell or distribute obscenity; to send, ship, or receive obscenity; to import obscenity; to transport obscenity across state borders for purposes of distribution, including aiding and abetting in the commission of such crimes; and to produce, distribute, receive, possess with intent to distribute, or possess an obscene visual depiction of a minor engaging in sexually explicit conduct. *See, e.g.*, Criminal Division, U.S. Department of Justice, *Citizen's Guide to U.S. Federal Law on Obscenity* (Aug. 11, 2025), https://perma.cc/6T6N-QZ8V (citing 18 U.S.C. §§ 1460–69, 18 U.S.C. § 1470).

More recently, President Trump signed into law the bipartisan Tools to Address Known Exploitation by Immobilizing Technological Deepfakes on Websites and Networks Act, also known as the TAKE IT DOWN Act. *See* Pub.

L. No. 119-12 (May 19, 2025). The TAKE IT DOWN Act makes it a federal crime to publish authentic or digitally forged intimate images depicting minors or adults in certain circumstances; the statute also criminalizes threats to undertake these acts. *See* 47 U.S.C. § 223(h).

***Fostering American AI Dominance***. Notwithstanding some illegitimate uses of AI, there is no questioning the many constitutional and productive uses of the frontier technology, particularly as AI innovation continues to accelerate. "United States leadership in [AI]" across the globe will promote "national and economic security" and lead to "trillions of dollars of investments across the country." Exec. Order No. 14365 § 1, 90 Fed. Reg. 58,499 (Dec. 11, 2025). For that reason, it "is the policy of the United States to sustain and enhance the United States' global AI dominance through a minimally burdensome national policy framework for AI"—one "national standard," rather than "50 discordant state ones." *Id.* §§ 1–2; Exec. Order No. 14409 § 1, 91 Fed. Reg. 34,565 (June 2, 2026) ("The United States continues to lead the world in [AI] because of the enormous talent and innovation of our AI industry, and because we refuse to stifle this innovation with overly burdensome regulation.").

To be sure, the United States has determined "not [to] interfere with states' rights to pass prudent laws that are not unduly restrictive to innovation." The White House, *Winning the Race: America's AI Action Plan*, at 3 (July 2025), https://perma.cc/22W3-G3AU. But it remains true that a "patchwork of

50 different regulatory regimes . . . makes compliance more challenging" for domestic AI companies. Exec. Order No. 14365 § 1. Ultimately, "[t]o win" on the global stage, "United States AI companies must be free to innovate without cumbersome regulation" or the threat of ruinous damages. *Id.*; *see also* Memorandum of the Attorney General Establishing the Artificial Intelligence Litigation Task Force (Jan. 9, 2026), https://perma.cc/JBU4-HH2C (recognizing that state AI laws can interfere with United States' interests in promoting American AI leadership necessary for national and economic security).

## DISCUSSION

The evils of computer-facilitated sexual harm and obscenity—including child exploitation or nonconsensual imagery—must be eradicated root to branch. For decades, the United States has combated such evil with carefully calibrated federal laws that are consistent with the First Amendment. And as the federal obscenity statutes, the federal child pornography statutes, and the TAKE IT DOWN Act demonstrate, the United States continues to uphold cherished First Amendment rights while aggressively rooting out computer-facilitated sexual harm and obscenity from evolving technologies.

The United States also has an interest in promoting national and economic security through evolving technologies such as AI. *See, e.g.*, Exec. Order No. 14365 § 1. HF 1606 conflicts with this policy because, while Minnesota and the United States share the same goals of protecting against sexual harm and

obscenity, HF 1606 stretches far more broadly with its strict liability regime to risk paralyzing the AI industry and hampering United States leadership in AI.

## I. Narrowly Tailored Federal Law Combating Computer-Facilitated Sexual Harm and Obscenity

In 2003, Congress enacted the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Act, also known as the PROTECT Act, Pub. L. No. 108-21 (Apr. 30, 2003). The Act makes it a crime to "knowingly produce[], distribute[], receive[], or possess[] with intent to distribute, a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting," that "depicts a minor engaging in sexually explicit conduct" and "is obscene," or that "depicts an image that is, or appears to be, of a minor engaging in graphic bestiality, sadistic or masochistic abuse, or sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex." 18 U.S.C. § 1466A(a)(1), (2). The PROTECT Act also makes unlawful the knowing possession of such images. *Id.* § 1466A(b).[2]

The PROTECT Act also includes a pandering offense. *Id.* § 2252A(a)(3)(B). Section 2252A(a)(3)(B) makes it a crime to knowingly "advertise[], promote[], present[], distribute[], or solicit[]" through a means or facility

[2] The term "sexually explicit conduct" includes "sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal," as well as "bestiality; . . . masturbation; . . . sadistic or masochistic abuse; . . . or . . . lascivious exhibition of the anus, genitals, or pubic area of any person." 18 U.S.C. §§ 1466A(f)(2), 2256(2)(A)–(B).

of interstate commerce "any material or purported material in a manner that reflects the belief, or that is intended to cause another to believe, that the material or purported material is, or contains . . . an obscene visual depiction of a minor engaging in sexually explicit conduct; or . . . a visual depiction of an actual minor engaging in sexually explicit conduct." *Id.*

PROTECT Act prosecutions targeting receipt, possession, and transmission of AI-generated CSAM have resulted in guilty verdicts that have withstood constitutional challenges. *See, e.g.*, *United States v. Yener*, 2026 WL 177600, at *2–5 (S.D. Fla. 2026) (rejecting constitutional challenges); *see also* DOJ Press Release, *Repeat Sex Offender Convicted of Child Exploitation Offenses, Including Receiving and Possessing AI-Generated Child Sexual Abuse Material* (Feb. 6, 2026), https://perma.cc/MEJ2-ACY8 (same).

Most recently, in 2025, President Trump signed into law the TAKE IT DOWN Act—a landmark step in the fight to protect victims of digital exploitation. The TAKE IT DOWN Act makes unlawful the actual and threatened publication of covered images of adults and minors—authentic images, as well as digital forgeries commonly referred to "deepfakes." *See* 47 U.S.C. § 223(h).

A "digital forgery" under the Act is "any intimate visual depiction of an identifiable individual created through the use of software, machine learning, artificial intelligence, or any other computer-generated or technological means, including by adapting, modifying, manipulating, or altering an authentic

visual depiction" that when viewed by a reasonable person "is indistinguishable from an authentic visual depiction of the individual." *Id.* § 223(h)(B). An "intimate visual depiction," in turn, is an image that depicts, among other things, "the uncovered genitals, pubic area, anus, or post-pubescent female nipple of an identifiable individual," or "the display or transfer of bodily sexual fluids" onto or from the body of an identifiable individual. 15 U.S.C. § 6851(a)(5)(A)(i)–(ii); *see also* 47 U.S.C. § 223(h)(1)(E).

The offense of publishing a digital forgery of an adult is made up of six elements. The publication of the image or video must (1) be done "knowingly;" (2) occur "in interstate or foreign commerce" through the "use of an interactive computer service"; (3) be done "without the consent" of the adult depicted; (4) portray information "not voluntarily exposed by the identifiable individual in a public or commercial setting"; (5) portray content that "is not a matter of public concern"; and (6) be done with the "inten[t] to cause harm" or actually "cause[] harm, including psychological, financial, or reputational harm," to the person depicted. *Id.* § 223(h)(3)(A).

The elements of the offense of publishing a digital forgery of a minor are slightly different, and the offense does not include a violation-of-consent element, as minors cannot consent. *Id.* § 223(h)(B). The publication of the image or video must also be done "knowingly" and must occur "in interstate or foreign commerce" through the "use of an interactive computer service," and it must

be made "with intent to . . . abuse, humiliate, harass, or degrade the minor; or . . . arouse or gratify the sexual desire of any person." *Id.*

Importantly, the TAKE IT DOWN Act established a "[n]otice and removal" regime enforced by the Federal Trade Commission, enshrining into federal law an additional means to reduce the spread of harmful images. *Id.* § 223a. Since May 2026, "covered platform[s]" like xAI[3] must "establish a process whereby an identifiable individual" can "notify the covered platform of an intimate visual depiction published on the covered platform" without that individual's consent, and "submit a request for the covered platform to remove" such images. *Id.* § 223a(a)(1)(A)(i)–(ii); *see also id.* § 223a(a)(2) (requiring platforms to "provide on the platform a clear and conspicuous notice" that a complaint process is available). "[V]alid removal request[s]" must be fulfilled "not later than 48 hours" after the request is received. *Id.* § 223a(a)(3). A platform's "failure to reasonably comply" with this scheme is considered an unfair or deceptive act or practice within the meaning of the FTC Act, subjecting the platform to significant civil liability. *Id.* § 223a(b)(1); *see also* 15 U.S.C. § 57a(a)(1)(B).

President Trump received bipartisan praise for signing the TAKE IT

[3] *See* Press Release, *FTC Chairman Ferguson Advises Companies to Comply with the Take it Down Act* (May 11, 2026), https://perma.cc/237B-7NAN (explaining that Amazon, Alphabet, Apple, Bumble, Discord, Meta, Microsoft, Pinterest, SnapChat, TikTok, X, and more were contacted by the FTC).

DOWN Act. Senator Klobuchar, for example, celebrated the signing: "Big news: my bipartisan TAKE IT DOWN Act w/Sen. Cruz was signed into law by the President today. It protects victims of online abuse and set some rules of the road for social media and AI. Thank you to the First Lady for her support and to the advocates who made this possible." The White House, *President Trump Signs TAKE IT DOWN Act into Law* (May 19, 2025), https://perma.cc/U886-99G9. Senator Cruz wrote: "TAKE IT DOWN ACT is an historic win for victims of revenge porn and deepfake image abuse." *Id.*

## II. Minnesota's Law Combating Computer-Facilitated Sexual Harm and Obscenity (HF 1606) Sweeps More Broadly than Federal Law

In 2026, Minnesota enacted HF 1606. A purpose of the law is to prevent CSAM and "harmful weaponizations of nudity." *MN's Opp'n*, Dkt. 38 at 1, 24. Though HF 1606 shares the same general purpose with federal law, it sweeps up constitutional and productive conduct not prohibited under federal law because of the way Minnesota drafted (and apparently will enforce) the statute.

First, the definition of "intimate part" in HF 1606 is broader than the definition of "intimate visual depiction" under federal law. Minnesota borrowed the "intimate part" definition from a criminal-sexual-conduct statute addressing non-consensual *physical contact*, rather than *visual depiction*; that definition includes the "inner thigh" or "breast" (male or female), in addition to "the primary genital area, groin, [or] buttocks, . . . of a human being." *Id.*

§ 609.341, subd. 5. By contrast, federal law defines "intimate visual depiction" in the TAKE IT DOWN Act as an image that depicts "the uncovered genitals, pubic area, anus, or post-pubescent female nipple of an identifiable individual." 47 U.S.C. § 223(h)(1)(E) (incorporating term as defined in 15 U.S.C. § 6851(a)(5)(A)(i)). The definition of "intimate parts" in Minnesota's separate deepfake statute aligns more closely with federal law addressing visual depiction. *Compare* 47 U.S.C. § 223(h)(1)(E), *with* Minn. Stat. § 617.262, subd. 1(f) (defining "intimate parts" to include "the genitals, pubic area, anus, or partially or fully exposed nipple of an individual"). But HF 1606 goes far beyond that definition by incorporating a definition addressing physical contact. To provide a practical example, whereas HF 1606 would apply to an artificially generated image of a shirtless man in a swimming pool, federal law does not.

Next, unlike federal law described above that contains scienter requirements, or which at the very least gives platforms the ability to remove such images after they are notified about them before incurring significant civil liability, HF 1606 imposes a strict liability regime. *See, e.g.*, 47 U.S.C. § 223(h)(2)(A) ("knowingly"); *id.* § 223a(1) (notice and removal process). Liability for violating HF 1606 turns on whether a user alters an image or video in a proscribed way. And HF 1606 exposes AI companies to crushing penalties of as much as $500,000 "for each unlawful access, download, or use" of their technology to "nudify an image or video." Minn. Stat. § 325E.91, subd. 2, subd. 5(a).

Third, while the TAKE IT DOWN Act applies when an adult does not consent, HF 1606 does not have a similar provision. 47 U.S.C. § 223(h)(3)(A). HF 1606, in other words, imposes strict liability against an AI platform even when the user created an image with the consent of an adult, including instances where users create images of themselves. *See Reply Br.*, Dkt. 39 at 14.

Finally, federal law excludes images depicting "a matter of public concern." *Id.* § 223(h)(3)(A)(iii); *id.* § 223(h)(3)(C)(ii)(III) (exempting images disclosed "reasonably and in good faith … as part of medical education, diagnosis, or treatment or for a legitimate medical, scientific, or education purpose"). HF 1606 does not have the same provision to exempt constitutional and productive activities from its strict liability regime, other than a nebulous savings clause for "technological or artistic skill and judgment." *MN Opp'n*, Dkt. 38 at 31.

## CONCLUSION

Congress has given the United States carefully calibrated tools to combat computer-generated sexual harm and obscenity. These tools, such as the PROTECT Act and the TAKE IT DOWN Act, carefully balance preserving constitutionally protected and productive conduct with preventing the evils of CSAM, revenge pornography, obscenity, and more. Through this balancing, the United States can both prevent evil conduct and lead the world in frontier technologies. As the Nation "remain[s] in the earliest days of" the AI "technological revolution" and in a "race with adversaries for supremacy within it," States

must be careful not to impose excessive measures that hinder American national and economic security. *See* Exec. Order 14365 § 1.

Dated: August 18, 2026

Respectfully submitted,

STANLEY E. WOODWARD, JR.
*United States Associate Attorney General*

*/s/ John K. Adams*
JOHN K. ADAMS
*Deputy Associate Attorney General*
MICHAEL WEISBUCH
*Senior Counsel to the Associate Attorney General*
HENRIQUE CARNEIRO
*Counsel to the Associate Attorney General*

U.S. Department of Justice
950 Pennsylvania Ave NW
Washington, DC 20530
(202) 514-9500

*Counsel for the United States of America*