**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| X.AI LLC,<br><br>Plaintiff,<br><br>v.<br><br>KEITH ELLISON, in his official capacity, as Attorney General of Minnesota,<br><br>Defendant. | Case No. 0:26-cv-03425-DWF-DTS<br><br>Hon. Judge Donovan W. Frank<br><br>**MEMORANDUM OF LAW IN SUPPORT OF X.AI LLC'S MOTION FOR INJUNCTION PENDING APPEAL**<br><br>**EXPEDITED HANDLING REQUESTED** |

# TABLE OF CONTENTS


INTRODUCTION .......... 1

BACKGROUND .......... 1

ARGUMENT .......... 5

I. xAI Is Likely To Succeed On The Merits of Its Appeal. .......... 5

A. xAI's users are engaged in protected speech when they create or alter images using Grok Imagine. .......... 6

B. xAI has a protected First Amendment interest, and it likewise has standing to assert its users' First Amendment interests .......... 8

C. Section 325E.91 imposes a content-based restriction on protected speech and thus is presumptively invalid. .......... 9

D. Section 325E.91 fails strict scrutiny because it is overinclusive and there are other far less restrictive means of addressing the state's asserted interest. .......... 10

E. Section 325E.91 is also facially overbroad and thus chills protected speech. .......... 15

F. Section 325E.91 also fails intermediate scrutiny because it is not narrowly tailored .......... 16

II. The Remaining Factors Support an Injunction Pending Appeal. .......... 17

A. xAI and its users face ongoing and irreparable harm. .......... 17

B. The balance of equities and public interest factors favor an injunction pending appeal. .......... 19

CONCLUSION .......... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*303 Creative LLC v. Elenis*,
600 U.S. 570 (2023) ... 6, 7

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
594 U.S. 758 (2021) ... 19

*Am. Beverage Ass'n v. City of S.F.*,
2016 WL 9184999 (N.D. Cal. June 7, 2016) ... 5

*Ashcroft v. Free Speech Coal.*,
535 U.S. 234 (2002) ... 8, 11, 12, 16

*Brown v. Ent. Merchs. Ass'n*,
564 U.S. 786 (2011) ... 7, 9

*Buckley v. Valeo*,
424 U.S. 1 (1976) ... 8

*Carey v. Population Servs. Int'l*,
431 U.S. 678 (1977) ... 8

*Counterman v. Colorado*,
600 U.S. 66 (2023) ... 12

*Craig v. Boren*,
429 U.S. 190 (1976) ... 8, 9

*Elrod v. Burns*,
427 U.S. 347 (1976) ... 17

*Erznoznik v. City of Jacksonville*,
422 U.S. 205 (1975) ... 11, 16

*Free Speech Coalition v. Paxton*,
606 U.S. 461 (2025) ... 6

*Gordon v. Holder*,
632 F.3d 722 (D.C. Cir. 2011) ... 18

*Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*,
115 F.4th 889 (8th Cir. 2024) ........................................................................18

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
515 U.S. 557 (1995).........................................................................................7

*Irizarry v. Yehia*,
38 F.4th 1282 (10th Cir. 2022) ........................................................................7

*Kohls v. Ellison*,
166 F.4th 728 (8th Cir. 2026) ........................................................................18

*McCullen v. Coakley*,
573 U.S. 464 (2014).......................................................................................10

*Minn. Citizens Concerned for Life, Inc. v. Milbert*,
2012 WL 5378077 (D. Minn. Oct. 31, 2012) ...................................................5

*Minn. Citizens Concerned for Life, Inc. v. Swanson*,
692 F.3d 864 (8th Cir. 2012) .........................................................................17

*Minn. v. U.S. Dep't of Agriculture*,
826 F. Supp. 3d 975 (D. Minn. 2026)...............................................................5

*Minn. Voters Alliance v. Walz*,
494 F. Supp. 3d 610 (D. Minn. 2020)...............................................................5

*Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*,
460 U.S. 575 (1983)..........................................................................................7

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024)...............................................................................6, 8, 15

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992)........................................................................................19

*Murdock v. Pennsylvania*,
319 U.S. 105 (1943)..........................................................................................8

*Ness v. City of Bloomington*,
11 F.4th 914 (8th Cir. 2021) .......................................................................6, 7

*NetChoice v. Griffin*,
812 F. Supp. 3d 905 (W.D. Ark. 2025) ....................................................17

*NetChoice v. Griffin*,
831 F. Supp. 3d 816 (W.D. Ark. 2026) ......................................................6

*NetChoice, LLC v. Fitch*,
134 F.4th 799 (5th Cir. 2025) ..................................................................9

*Packingham v. North Carolina*,
582 U.S. 98 (2017)................................................................................16

*Phelps-Roper v. Nixon*,
509 F.3d 480 (8th Cir. 2007) ..................................................................17

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015)...........................................................................9, 10

*Reno v. ACLU*,
521 U.S. 844 (1997)..................................................................................9

*Republican Party of Minn. v. White*,
416 F.3d 738 (8th Cir. 2005) ..................................................................10

*Schmitt v. Rebertus*,
148 F.4th 958 (8th Cir. 2025) ...........................................................17, 19

*Sec. of State of Md. v. Joseph H. Munson Co., Inc.*,
467 U.S. 947 (1984)..................................................................................8

*Smith v. California*,
361 U.S. 147 (1959)................................................................................20

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011)..................................................................................7

*United States v. Playboy Ent. Grp., Inc.*,
529 U.S. 803 (2000).......................................................................9, 10, 13

*United States v. Stevens*,
559 U.S. 460 (2010).......................................................................9, 15, 16

*United States v. Williams*,
553 U.S. 285 (2008)....................15

*Video Software Dealers Ass'n v. Webster*,
968 F.2d 684 (8th Cir. 1992)....................12

*Virginia v. Am. Booksellers Ass'n, Inc.*,
484 U.S. 383 (1988)....................8

*Virginia v. Hicks*,
539 U.S. 113 (2003)....................15

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989)....................16

**Statutes**

15 U.S.C. § 6851....................13

47 U.S.C. § 223....................13, 14

47 U.S.C. § 223....................14

Minn. Stat. § 325E.91....................*passim*

Minn. Stat. § 604.32....................14

Minn. Stat. § 609.341....................2

Minn. Stat. § 617.262....................13, 14

## INTRODUCTION

Plaintiff X.AI LLC ("xAI") has appealed this Court's order denying its motion for a preliminary injunction. *See* ECF No. 55. xAI plans to ask the Eighth Circuit to stay section 325E.91 pending appeal. Pursuant to Federal Rule of Appellate Procedure 8(a)(1)(C)—which requires that a request for an injunction pending appeal be made first in the district court—xAI now respectfully seeks an injunction pending that appeal. Since it went into effect on August 1, 2026, section 325E.91 has violated the First Amendment rights of xAI and its users, and the constitutional questions raised by xAI merit appellate review before section 325E.91 is enforced.

Accordingly, xAI respectfully moves for a limited injunction pending the conclusion of its appeal from this Court's order on xAI's motion for preliminary injunction. xAI respectfully requests a ruling on this motion by Wednesday, September 9, 2026, so that—if necessary—it may promptly seek relief from the Eighth Circuit.

## BACKGROUND

Minn. Stat. § 325E.91 is supposed to address the serious issues caused by nonconsensual dissemination of nude images. But section 325E.91 is an overbroad, content-based ban on free speech and the tools of visual expression. It defines "nudify" as "the process by which: (1) an image or video is altered or generated to depict an intimate part not depicted in an original unaltered image or video of an

identifiable individual; and (2) the altered or generated image or video is so realistic that a reasonable person would believe that the intimate part belongs to the identifiable individual." Minn. Stat. § 325E.91, subd. 1(d). This definition turns on two terms: "intimate part" and "identifiable individual."

"Intimate part" is not defined directly in the statute. Minn. Stat. § 325E.91, subd. 1(c). It instead borrows a definition from Minnesota's sexual conduct laws, which define "intimate parts" as including "the primary genital area, groin, inner thigh, buttocks, or breast of a human being," Minn. Stat. § 609.341, subd. 5. In the context of those laws, the term delineates when nonconsensual touching constitutes criminal sexual contact. *See* Minn. Stat. § 609.341, subd. 11.

Section 325E.91 defines the other key term, "identifiable individual," as "a person that is identifiable: (1) from the image itself, by the person depicted in the image, or by another person; or (2) from personal information displayed in connection with the image." Minn. Stat. § 325E.91, subd. 1(b). The only textual limit on these definitions is the law's realism requirement: the altered or generated image must be "so realistic that a reasonable person would believe that the intimate part belongs to the identifiable individual." Minn. Stat. § 325E.91, subd. 1(d)(2).

Equally significant is what section 325E.91 does *not* say. The word "consent" appears nowhere in the statute. Liability does not depend on whether the subject objected to the image, welcomed it, or even made it personally. Section 325E.91

likewise contains no exception for images of artistic, scientific, political, satirical, educational, medical, or religious significance. Its only exemption turns on the technical skill a service requires of its user, not on the value or purpose of the image. *See* Minn. Stat. § 325E.91, subds. 1(e), 3. Nor does section 325E.91 contain any scienter requirement; it instead creates a strict-liability regime. And it provides no defense or safe harbor for a service whose terms of use prohibit creation of a covered image or whose technical controls are designed to block such works—even if those controls are state-of-the-art and function to near-perfection. Providers are liable for "each unlawful access, download, or use" by a user, *see id.*, subd. 5(a), no matter what measures they have deployed to prevent that use and no matter what efforts a user makes to circumvent them.

Since August 1, 2026, every photograph edited by Minnesota users has triggered a separate potential $500,000 penalty, and the possibility of a private cause of action whereby individuals may seek treble damages, punitive damages, injunctive relief, and attorney fees. *See id.*, subds. 4, 5(a). Confronted with that exposure, xAI restricted Grok Imagine's image-editing feature in various ways before the effective date. ECF No. 1 ("Compl.") ¶ 15; ECF No. 14 ¶ 21; ECF No. 40 ¶ 19. The restricted service will likely cost xAI users and goodwill in Minnesota. ECF No. 15 ¶ 20; ECF No. 40 ¶ 24. But for section 325E.91 and its penalties, xAI

would continue to offer Grok Imagine's editing features to Minnesotans without these additional limitations. *Id.* ¶ 22.

On September 4, 2026, the Court denied xAI's motion for a preliminary injunction. ECF No. 54. The Court held that xAI had failed to show irreparable harm. Although xAI filed its complaint and motion for preliminary injunction before the statute's effective date, and less than three months after the statute was passed, the Court faulted xAI for not filing sooner. *Id.* at 7–8. The Court also held that xAI had failed to show that it was incurring ongoing costs related to increased content moderation. *Id.* at 9–10. Finally, the Court held that xAI had failed to show that the loss of First Amendment rights independently constituted irreparable harm. *Id.* at 11. Notably, the Court did not reject xAI's argument that its First Amendment rights (and those of its users) were being violated. Nor did it deny that the loss of First Amendment rights for even a brief time constitutes irreparable harm. Instead, the Court held that a showing of irreparable harm *in addition* to the violation of First Amendment rights is required. *Id.* at 11. The Court also stated that a court may deny a motion for preliminary injunction even in the First Amendment context based on unreasonable delay. *Id.*

For similar reasons, the Court concluded that the balance of equities weighed against a preliminary injunction. *Id.* at 12 (finding that "xAI's evidence of irreparable harm is unconvincing" and "belied by their own delay").

xAI filed its notice of appeal on September 4, 2026. ECF Doc. 55. To expedite its ability to seek relief in the Eighth Circuit, xAI respectfully requests a decision on this motion by Wednesday, September 9, 2026.

## ARGUMENT

A motion for an injunction pending appeal "is governed by the same factors that appl[y] to [a] motion for a preliminary injunction, namely: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant if the injunction is not granted; (3) the balance between that harm and the harm that granting the injunction will inflict on the other parties; and (4) the public interest." *Minn. Voters Alliance v. Walz*, 494 F. Supp. 3d 610, 612 (D. Minn. 2020); *accord Minn. v. U.S. Dep't of Agriculture*, 826 F. Supp. 3d 975, 1008 (D. Minn. 2026); *Minn. Citizens Concerned for Life, Inc. v. Milbert*, 2012 WL 5378077, at *2 (D. Minn. Oct. 31, 2012). Courts have noted that "an injunction pending appeal may be appropriate, even if the Court believed its analysis in denying preliminary injunctive relief is correct." *Am. Beverage Ass'n v. City of S.F.*, 2016 WL 9184999, at *2 (N.D. Cal. June 7, 2016).

### I. xAI Is Likely To Succeed On The Merits of Its Appeal.

Although the Court did not reach this issue in its order denying xAI's request for preliminary injunction, xAI has demonstrated a strong likelihood of success on the merits. Section 325E.91 restricts protected speech (*i.e.*, the creation of images

and videos) and thereby burdens the expressive rights of xAI and the people who use Grok Imagine. *E.g.*, *Moody v. NetChoice, LLC*, 603 U.S. 707, 740 (2024) (affording "First Amendment protection" to "expressive choices" made by social-media platforms, such as how to "display" third-party speech); *Ness v. City of Bloomington*, 11 F.4th 914, 923 (8th Cir. 2021) (First Amendment protections apply to "an important stage of the speech process that ends with the dissemination of information"); *NetChoice v. Griffin*, 831 F. Supp. 3d 816, 828 (W.D. Ark. 2026) ("NetChoice has third-party standing to assert the First Amendment rights of its members' users"). Moreover, section 325E.91's content-based burdens trigger strict scrutiny, which is "fatal in fact absent truly extraordinary circumstances." *Free Speech Coalition v. Paxton*, 606 U.S. 461, 485 (2025). Thus, xAI has raised serious questions regarding the constitutionality of section 325E.91, and the appellate courts should be permitted to assess the statute's constitutionality before it is enforced against xAI and others.

### A. xAI's users are engaged in protected speech when they create or alter images using Grok Imagine.

Minnesotans use Grok Imagine to generate images and videos on subjects as varied as human thought—news, politics, religion, science, and education among them. ECF No. 14 ¶ 9. xAI develops and provides the tool that makes it possible for Minnesotans to create this speech. The images and videos that users create with Grok Imagine are protected speech within the meaning of the First Amendment. *See 303*

*Creative LLC v. Elenis*, 600 U.S. 570, 587 (2023); *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 569 (1995); *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 790 (2011).

The act of creating those images and videos is likewise protected. "Whether government regulation applies to creating, distributing, or consuming speech makes no difference." *Ent. Merchs.*, 564 U.S. at 792 n.1; *see also Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011); *Ness*, 11 F.4th at 923. Were it otherwise, "the government could bypass the Constitution by simply proceeding upstream and damming the source of speech." *Irizarry v. Yehia*, 38 F.4th 1282, 1289 (10th Cir. 2022).

The use of AI does not change the constitutional analysis. The "'basic principles of freedom of speech and the press … do not vary' when a new and different medium for communication appears." *Ent. Merchs*, 564 U.S. at 790 (quotation omitted). Expression is "no less protected speech today" because it is created with new instruments rather than "pen and paper." *303 Creative*, 600 U.S. at 587. The First Amendment also protects xAI insofar as it is developing and providing users with an expressive tool that facilitates their creation of speech because targeting those tools burdens the expression they make possible. *See, e.g.*, *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 582

(1983); *cf. Buckley v. Valeo*, 424 U.S. 1, 19 (1976) (per curiam); *Murdock v. Pennsylvania*, 319 U.S. 105, 113–14 (1943).

### B. xAI has a protected First Amendment interest, and it likewise has standing to assert its users' First Amendment interests

xAI has a protected First Amendment interest because designing an image-generation tool is an inherently expressive exercise that requires aesthetic and editorial judgment at every step, including about what the tool will and will not create. These choices are protected by the First Amendment. *See Moody*, 603 U.S. at 740 (affording "First Amendment protection" to "expressive choices" made by social-media platforms, such as how to "display" third-party speech).

xAI also has standing to vindicate its users' First Amendment interests. *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392-93 (1988) (allowing booksellers to assert the First Amendment rights of bookbuyers); *Sec. of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956 (1984) (unique concerns in First Amendment context "justify a lessening of prudential limitations on standing"); *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 252-53 (2002) (allowing distributors of protected speech to assert First Amendment rights of their audience); *cf. Craig v. Boren*, 429 U.S. 190, 195 (1976); *Carey v. Population Servs. Int'l*, 431 U.S. 678, 682-84 (1977). Because section 325E.91 has forced xAI to restrict Grok Imagine's image-editing features, xAI's users have less opportunity to create protected speech than users in every other state. xAI thus has standing to "act[] as [an] advocate[] of

the rights of third parties who seek access" to Grok Imagine. *Craig*, 429 U.S. at 195; *see also NetChoice, LLC v. Fitch*, 134 F.4th 799, 807 (5th Cir. 2025) ("[I]t is plain that an online platform is not barred by prudential standing when it asserts its users' First Amendment rights"); *Griffin*, 831 F. Supp. 3d at 828.

### C. Section 325E.91 imposes a content-based restriction on protected speech and thus is presumptively invalid.

It is the "most basic" principle of the First Amendment that the "government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ent. Merchs.*, 564 U.S. at 790–91. "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). The Supreme Court has applied these principles to speech of many different forms, including outdoor signs, violent video games, depictions of animal cruelty, and sexually suggestive content on television and online. *See id.* at 159; *Ent. Merchs.*, 564 U.S. at 799; *United States v. Stevens*, 559 U.S. 460, 468–69 (2010); *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813–14 (2000); *Reno v. ACLU*, 521 U.S. 844, 874 (1997).

Section 325E.91 explicitly regulates expression based on content. By its plain terms, the statute applies only to a website, application, software, program, or other service that can alter an image "to depict an intimate part not depicted" in the original

image. Minn. Stat. § 325E.91, subd. 1(d)(1). And providers violate section 325E.91 each time a user downloads, accesses, or uses the service "to nudify an image or video." *Id.*, subd. 2(a)(1). Put simply, section 325E.91 can only be enforced by reference to the content of the images that users create—a hallmark of content-based laws. *See McCullen v. Coakley*, 573 U.S. 464, 479 (2014). Section 325E.91 thus "singles out specific subject matter for differential treatment," which is the most "obvious" form of facial content discrimination. *Reed*, 576 U.S. at 163, 169.

### D. Section 325E.91 fails strict scrutiny because it is overinclusive and there are other far less restrictive means of addressing the state's asserted interest.

Content-based restrictions are "presumptively unconstitutional," and Minnesota bears the burden of proving that section 325E.91 is narrowly tailored to serve a compelling interest. *Id.* at 163; *Playboy*, 529 U.S. at 816. The State cannot do so because although xAI does not dispute Minnesota's compelling interest in curbing the nonconsensual dissemination of artificially generated nude images, the law is wildly overinclusive and is not the least restrict means of achieving the State's goal. *Republican Party of Minn. v. White*, 416 F.3d 738, 751 (8th Cir. 2005) (en banc).

A statute is overinclusive when it "sweep[s] too broadly," burdening more protected speech than the State's interest requires. *White*, 416 F.3d at 751. A state may not "suppress lawful speech as the means to suppress unlawful speech."

*Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255 (2002). Section 325E.91 sweeps far beyond Minnesota's interest and punishes a large amount of innocuous and protected speech.

*First*, section 325E.91 forbids a wide range of images containing no nudity as that term is ordinarily understood. Section 325E.91 covers benign images of people in shorts (inner thigh), men without shirts (breast), and competitive swimmers (buttocks and breast). The State does not have a legitimate interest in penalizing a company because a user created a similarly benign image with that company's image alteration tool. *See Erznoznik v. City of Jacksonville*, 422 U.S. 205, 213 (1975).

*Second*, section 325E.91 allows no exception for altered images and videos with political, scientific, educational, journalistic, artistic, medical, or religious value—all of which are unequivocally protected speech. It applies both to a citizen creating a strongman parody of a male politician posing shirtless and to a student maliciously creating deepfake pornography depicting a classmate. Although Minnesota has a significant interest in curbing the latter, it cannot assert any plausible interest in banning the former.

*Third*, section 325E.91 applies regardless of whether the depicted individuals consented to the alterations or performed the alterations themselves. Thus, section 325E.91 reaches every adult who edits a picture of herself (or of another with the subject's consent), so long as the end product fits the statute's broad definition of

"nudification." But the interest that Minnesota has in preventing *nonconsensual* "nudification" cannot sustain a prohibition on *consensual* "nudification."

*Fourth*, section 325E.91 creates a strict-liability regime with no scienter requirement. And the statute provides no safe harbor for AI providers whose terms of service prohibit nudification, and who enforce those terms, or who deploy robust, state-of-the-art controls to prevent the creation of prohibited images or videos. But the Supreme Court has held that the chilling effect flowing from speech-based punishments necessitate a "subjective mental-state requirement" before restrictions are imposed on even the least protected categories of expression—including obscenity, incitement, and true threats. *Counterman v. Colorado*, 600 U.S. 66, 75–76 (2023). As the Eighth Circuit has cautioned, "any statute that chills the exercise of First Amendment rights must contain a knowledge element." *Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 690 (8th Cir. 1992).

*Fifth*, section 325E.91 does not include a dissemination requirement. Accordingly, an image created and then immediately deleted by the user would expose the AI provider to the same $500,000 penalty as an image broadcast to the world. Because liability does not turn on distribution, Minnesota cannot invoke any purported distribution-related harms to sustain section 325E.91. *See Free Speech Coal.*, 535 U.S. at 253 (state "may not prohibit speech because it increases the

chance an unlawful act will be committed at some indefinite future time" (citation modified)).

In addition, section 325E.91 is not the least restrictive means of furthering the state's asserted interest. "If a less restrictive alternative would serve the [g]overnment's purpose, the legislature must use that alternative." *Playboy*, 529 U.S. at 813. The government has the burden "to prove that the [less restrictive] alternative will be ineffective to achieve its goals." *Id.* at 816. Here, existing state and federal law demonstrates that Minnesota's interest can be achieved in a less restrictive way.

To start, section 325E.91 could have been drafted with a narrower definition of "intimate part." Instead of borrowing from the state's criminal-sexual-contact statute, the Legislature could have used the deep-fake statute, which defines "intimate parts" more precisely to include "the genitals, pubic area, anus, or partially or fully exposed nipple of an individual." Minn. Stat. § 617.262, subd. 1(f). Congress has drawn the line even more carefully, defining "intimate visual depiction" in the Violence Against Women Act Reauthorization to include "the uncovered genitals, pubic area, anus, or post-pubescent female nipple of an identifiable individual." 15 U.S.C. § 6851(a)(5)(A)(i); *see also* 47 U.S.C. § 223(h)(1)(E) (TAKE IT DOWN Act incorporating definition). Either definition would reach every image the Legislature set out to stop here, without also applying to a runner in shorts or a swimmer in a racing suit, or, in the case of the federal statute, a shirtless man.

There are also several clear ways to render section 325E.91 less restrictive—all of which federal and Minnesota law have done before—including:

- Imposing liability only when the user created an image without the subject's consent. *See* Minn. Stat. § 617.262, subd. 2(1); *id.* § 604.32, subd. 2(a)(1); 47 U.S.C. § 223(h)(3)(A).

- Limiting liability to cases where a prohibited image (more narrowly defined) is disseminated. *See* Minn. Stat. § 617.262, subd. 2; 47 U.S.C. § 223(h)(3)(A).

- Imposing a scienter requirement like those found in Minnesota's deep-fake statute and the federal TAKE IT DOWN Act, which would narrow the statute even further while still advancing the state's interest by incentivizing providers to implement robust controls. *See* Minn. Stat. § 617.262, subd. 2(1) (requiring proof the actor "knows or reasonably should know" the subject did not consent); 47 U.S.C. § 223(h)(3)(A) (requiring knowing publication).

- Exempting images of evident value. *See, e.g.*, Minn. Stat. § 617.262, subd. 6(3)–(6) (exempting dissemination made "in the course of seeking or receiving medical or mental health treatment," in a commercial setting, "including the creation of artistic products for sale or display," where the image "relates to a matter of public interest and dissemination serves a lawful public purpose," or "for legitimate scientific research or educational purposes"); *see also, e.g.*, 47 U.S.C. § 223(h)(3)(A)(iii) (excluding images depicting "a matter of public concern"); *id.* § 223(h)(3)(C)(ii)(III) (exempting images disclosed "reasonably and in good faith … as part of medical education, diagnosis, or treatment or for a legitimate medical, scientific, or education purpose").

Because section 325E.91 is content based and fails strict scrutiny, it is unconstitutional, both facially and as applied to xAI. Accordingly, on appeal, xAI is likely to prevail on the merits of its pre-enforcement First Amendment claim.

### E. Section 325E.91 is also facially overbroad and thus chills protected speech.

The overbreadth doctrine confirms that xAI is likely to prevail on the merits on appeal. Under this doctrine, a law that "punish[es] a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep," is facially invalid. *Virginia v. Hicks*, 539 U.S. 113, 118–19 (2003) (citation modified). The analysis proceeds in two steps, separate from the tailoring inquiry. A court first construes the statute, because "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *United States v. Williams*, 553 U.S. 285, 293 (2008). It then identifies which of the statute's applications offend the First Amendment and "measure[s] them against the rest" of the statute's applications. *Moody*, 603 U.S. at 725. A statute is facially invalid where its "presumptively impermissible applications … far outnumber any permissible ones." *Stevens*, 559 U.S. at 481.

Turning to step one, section 325E.91's scope is fixed by the definitions of "nudify," "intimate part," and "identifiable individual" described above. Under any reasonable construction of section 325E.91, the law reaches every AI image-editing service available in Minnesota and every alteration that adds a covered body region to an image of a recognizable person.

The answer at step two is equally self-evident: section 325E.91 impermissibly applies to a wide range of constitutionally protected speech, and these impermissible

applications overwhelm its legitimate applications. As explained above, section 325E.91 reaches pictures that would not be considered "nudes" under any recognized definition; it reaches images that are political, satirical, religious, educational, journalistic, artistic, or medial in nature; it reaches AI-altered images where the subject consented and where the subject is the user himself; it reaches images that were never disseminated; and it reaches each of these regardless of whether the AI platform implemented terms of service and technical tools to block genuine nudification. *See supra* pp. 11–13. This renders section 325E.91 facially invalid. *See, e.g., Stevens*, 559 U.S. at 482 (invalidating statute directed at films depicting animal violence because it reached hunting videos and bullfighting films); *Free Speech Coal.*, 535 U.S. at 256 (invalidating ban on virtual child pornography because computer-generated images that "appear to be" of minors reached mainstream films depicting adolescent sexuality); *Erznoznik*, 422 U.S. at 213.

Because section 325E.91 is facially unconstitutional, xAI is likely to prevail on the merits of its First Amendment claim.

### F. Section 325E.91 also fails intermediate scrutiny because it is not narrowly tailored

Section 325E.91 would also fail intermediate scrutiny because it is not "narrowly tailored to serve a significant governmental interest." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *see Packingham v. North Carolina*, 582 U.S. 98, 107-08 (2017) (striking down ban on sex offenders' social-media access

under intermediate scrutiny for lack of narrow tailoring); *NetChoice v. Griffin*, 812 F. Supp. 3d 905, 924 (W.D. Ark. 2025) (enjoining law restricting social-media platform features as insufficiently tailored to State's interest in protecting minors). As explained above, section 325E.91 reaches wide swaths of protected speech, and the State had readily available alternatives that would have prohibited the targeted misconduct without burdening protected speech. *See supra* p.14.

## II. The Remaining Factors Support an Injunction Pending Appeal.

The irreparable-harm, balance-of-equities, and public-interest factors also favor enjoining section 325E.91's enforcement pending xAI's appeal.

### A. xAI and its users face ongoing and irreparable harm.

In a First Amendment case, "the likelihood of success on the merits is often the determining factor in whether a preliminary injunction should issue." *Phelps-Roper v. Nixon*, 509 F.3d 480, 485 (8th Cir. 2007); *see also Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012). After all, the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Schmitt v. Rebertus*, 148 F.4th 958, 970 (8th Cir. 2025) (same).

The Court's order denying xAI's motion for preliminary injunction did not deny that xAI's users are currently suffering the deprivation of their First Amendment rights. ECF No. 54 at 11. And there is no question that the continued

enforcement of the statute is imposing First Amendment harms because xAI has been forced to restrict access to its speech-creation tool to avoid incurring crippling sanctions. ECF No. 40 ¶ 19-21. This case is thus distinguishable from *Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*, 115 F.4th 889 (8th Cir. 2024), where the plaintiff sought a preliminary injunction sixteen months after receiving a no-trespass notice barring him from a school district's premises. The court denied the preliminary injunction in that case both because of the 16-month delay and because the record "did not indicate plaintiff's attempt or intent to return to the District premises during the pendency of the litigation." *Id.* at 893; *see also Kohls v. Ellison*, 166 F.4th 728, 732-33 (8th Cir. 2026) (denying preliminary injunction where plaintiff similarly waited 16 months to file motion). Here, by contrast, xAI moved less than three months after the statute was enacted—and several days *before* it became effective. No court that xAI is aware of has ever denied a preliminary injunction on delay grounds where the plaintiff sought relief before the challenged statute took effect. *See Gordon v. Holder*, 632 F.3d 722, 724 (D.C. Cir. 2011) (preliminary injunction motion filed before statute's effective date is "timely—or at least not late—by definition"). Moreover, unlike *Hotchkiss*, xAI has demonstrated that it is *currently restricting* access to its image alteration tool because of section 325E.91. In short, the First Amendment harm here is not "unsupported and speculative," *Hotchkiss*, 115 F.4th at 894—it is concrete and ongoing.

Beyond that, the act has imposed significant—and unrecoverable—compliance costs on xAI. *See* ECF No. 40 ¶ 19; *see, e.g.*, *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 765 (2021) (per curiam) (financial costs "with no guarantee of eventual recovery" are irreparable injury). xAI has provided unrebutted testimony that it *continues to spend* engineering resources to ensure that Grok Imagine complies with section 325E.91. ECF No. 40 ¶ 19. It is thus incorrect that xAI provided "no evidence" of ongoing costs. ECF No. 54 at 10. And even aside from the unrecoverable financial costs, xAI faces the daily "Hobson's choice" of "expos[ing itself] to potentially huge liability" or "suffer[ing] the injury of obeying" an unconstitutional law, which alone constitutes "irreparable injury." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992).

**B. The balance of equities and public interest factors favor an injunction pending appeal.**

The balance of equities and the public interest factors tilt just as decisively in favor of injunctive relief here. For one, "it is always in the public interest to protect constitutional rights." *Schmitt*, 148 F.4th at 970 (quoting *Rodgers v. Bryant*, 942 F.3d 451, 458 (8th Cir. 2019)). On the flip side, Minnesota has no valid interest because it may not "act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors*, 594 U.S. at 766. And "the balance of the equities generally favors the constitutionally-protected freedom of expression." *Schmitt*, 148 F.4th at 970 (quoting *Rodgers*, 942 F.3d at 458).

Maintaining the status quo until section 325E.91's constitutional problems can be fully adjudicated will cause little if any harm to the State because, as xAI has shown, its terms of service prohibit the creation of images that violate privacy rights, and Grok Imagine has been trained to block the creation of nudified or sexualized images. ECF No. 40 ¶¶ 11-14. Because the public has an interest in preserving complete access to a speech-enabling tool that remains available in the other forty-nine States, the equities tilt in favor of a preliminary injunction. *Cf. Smith v. California*, 361 U.S. 147 (1959).

## CONCLUSION

For the foregoing reasons, this Court should grant xAI's motion and enjoin Defendant from enforcing Minn. Stat. § 325E.91 during the pendency of xAI's appeal from the Order denying its motion for a preliminary injunction. xAI respectfully asks that the Court rule on this motion by Wednesday, September 9, 2026.

Dated: September 8, 2026

Respectfully submitted,

*/s/ Todd A. Noteboom*
Todd A. Noteboom (#0240047)
Andrew P. Leiendecker (#0399107)
Sarah R. Almquist (#0403469)
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
todd.noteboom@stinson.com
andrew.leiendecker@stinson.com
sarah.almquist@stinson.com

Robert E. Dunn (*pro hac vice*)
EIMER STAHL LLP
1999 S. Bascom Ave., Suite 1025
Campbell, CA 95008
(408) 889-1690
RDunn@eimerstahl.com

Johnathan Hall (*pro hac vice*)
EIMER STAHL LLP
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604
(312) 660-7600
jhall@eimerstahl.com

*Attorneys for Plaintiff X.AI LLC*